ENRIQUE REYES COREANO, demandante y recurrido, *v.* ING. WILSON M. LOUBRIEL, DIRECTOR EJECUTIVO DE LA AUTORIDAD DE LOS PUERTOS DE PUERTO RICO ET AL., demandados y recurrentes.

*Número:* R-78-366          *Resuelto:* 20 de junio de 1980

*Amadeo & Suro,* abogados de los recurrentes; *Enrique Reyes Coreano, pro se,* y *R. Adolfo de Castro* y *Nívea Raquel Avilés Caratini,* abogados del recurrido.

EL JUEZ ASOCIADO SEÑOR TORRES RIGUAL emitió la opinión del Tribunal.

El temor de que se nos tache de inconsistentes no debe impedir que reconsideremos la opinión emitida en este caso el pasado 20 de noviembre. Persistir en el error para realzar la consistencia de lo decidido constituiría una abdicación del deber que tenemos, como tribunal apelativo, de impartir justicia y de pautar el derecho. Es por ello que abordamos nuevamente la controversia cuya solución hemos intentado en dos opiniones anteriores.

■ Se recordará que para el mes de noviembre de 1976, el recurrido Reyes Coreano ocupaba el puesto de Ayudante del Director Ejecutivo Auxiliar en Administración y Finanzas de la Autoridad de los Puertos. Todos los empleados de la Autoridad, aun los que desempeñaban las tareas más rutinarias, estaban entonces incluidos en el Servicio Exento por disposición expresa de la Sec. 8(a) de la anterior Ley de Personal, Ley Núm. 345 de 12 de mayo de 1947 (3 L.P.R.A. sec. 648(a)).(1) El 17 de noviembre de 1976, dos semanas

---

(1) Es preciso subrayar este dato porque en la opinión del 20 de noviembre de 1979 afirmamos incorrectamente que el puesto ocupado por Reyes Coreano era de confianza. Si bien el anterior Servicio Exento y el actual servicio de confianza comparten la característica de haber sido y ser sus respectivos integrantes de libre selección y remoción, ello no quiere decir que éste sea el equivalente de aquél. Debe recordarse que no todo empleado en el Servicio Exento intervenía o colaboraba sustancialmente en la formulación de la política pública de gobierno, o asesoraba o prestaba

después de celebradas las elecciones generales de aquel año, la Autoridad promulgó un Reglamento de Personal para cubrir a sus empleados no unionados. La adopción de dicho Reglamento se hizo con el propósito de garantizar una administración de personal basada en el principio de mérito, [2] en cumplimiento con la Sec. 10.6 de la nueva Ley de Personal, 3 L.P.R.A. sec. 1338, la cual reproduciremos más adelante. En la Sec. 103.31 del Reglamento se especificaron los puestos de confianza, un total de ocho, cuyos ocupantes serían de libre selección y remoción. Los demás empleados quedaron clasificados de carrera, requiriéndose para su destitución justa causa, formulación y notificación previa de cargos por escrito, y vista administrativa de solicitarla el empleado. El puesto ocupado por Reyes Coreano no fue incluido entre los de confianza, quedando, por tanto, clasificado como empleado de carrera.

El 17 de marzo de 1977, la nueva dirección de la Autoridad de los Puertos promulgó un segundo Reglamento de Personal, para todo fin práctico idéntico al anterior, salvo que los puestos de confianza se aumentaron de ocho a treinta y cuatro. [3] El puesto de Reyes Coreano quedó esta vez clasificado como de confianza, con el nuevo título de Subdirector Ejecutivo Auxiliar en Administración. El puesto continuó

---

servicios directos al jefe de la agencia, criterios fundamentales que distinguen hoy el servicio de confianza del de carrera.

[2] Específicamente el reglamento dispuso en su Sec. 100.1 lo siguiente:

"A los fines de propiciar y de garantizar una administración de personal basada en el principio de mérito, la Autoridad se afirma en los siguientes principios:

(a) Establecer el mérito como el principio que regirá toda la administración de personal . . . ."

[3] En esa misma fecha, mediante su Resolución Núm. 253, la Autoridad enmendó, además, su Reglamento Corporativo con el propósito de reorganizar su estructura interna. Como resultado de ello, a los puestos del Director Ejecutivo y los siete oficiales corporativos que hasta entonces ejercían sus cargos a voluntad de éste, se añadieron veintiséis puestos, entre ellos el del recurrido, que se catalogaron como posiciones de "formulación de política pública de confianza" en la corporación.

siendo el mismo, aunque su nivel en la escala de retribución fue mejorado. Reyes Coreano, sin embargo, nunca ejerció los deberes del puesto, pues fue asignado a la División Legal de la agencia. Finalmente, el 31 de mayo de 1977, la Autoridad eliminó su puesto y le despidió. A pesar de que se trató de justificar la acción tomada aduciendo razones presupuestarias, la separación del recurrido obedeció fundamentalmente, según las conclusiones del tribunal de instancia, a que se le consideró como empleado de confianza y, por tanto, de libre remoción.

Reclamada judicialmente por Reyes Coreano la reinstalación en su empleo y el pago de los sueldos dejados de percibir, el tribunal de instancia declaró con lugar la demanda y ordenó la reposición. La Autoridad interpuso recurso de revisión que dio motivo a las opiniones de este Tribunal de 31 de mayo y 20 de noviembre de 1979.

En la opinión del 31 de mayo de 1979 confirmamos la sentencia recurrida al concluir que la prohibición estatuida en la Sec. 4.7 de la nueva Ley de Personal, 3 L.P.R.A. sec. 1337, (⁴) contra transacciones de personal durante períodos pre y post eleccionarios de dos meses no aplicaba a la Autoridad de los Puertos por haber sido dicha agencia expresamente excluida de sus disposiciones en virtud de la Sec. 10.6 de la misma ley, 3 L.P.R.A. sec. 1338. (⁵) En reconsideración, sin

---

(⁴) En lo pertinente la Sec. 4.7 dispone:

"A los fines de asegurar la fiel aplicación de mérito en el servicio público durante períodos pre y post eleccionarios, las autoridades deberán abstenerse de efectuar cualquier transacción de personal que envuelva las áreas esenciales al principio de mérito, tales como nombramientos, ascensos, descensos, traslados y cambios de categoría de empleados.

"Esta prohibición comprenderá el período de dos meses antes y dos meses después de la celebración de las Elecciones Generales en Puerto Rico. En el caso de los municipios se entenderá que la prohibición se extiende hasta el segundo lunes del mes de enero siguiente a dichas Elecciones Generales."

(⁵) La Sec. 10.6 dispone en parte:

"Las disposiciones de este Capítulo no aplicarán a las siguientes ramas, agencias e instrumentalidades del Gobierno:

(1)  .        .        .        .        .        .        .        .

embargo, dejamos sin efecto este dictamen el 20 de noviembre de 1979 y revocamos la sentencia recurrida por considerar que no había sido la intención del legislador al excluir a la Autoridad de los Puertos de las disposiciones de la mencionada Ley de Personal, liberarla también de la prohibición de marras por ser ésta esencial al principio de mérito cuya vigencia se extiende a todas las agencias gubernamentales, excluidas o no de la ley.

Por los fundamentos que pasamos a exponer, hemos decidido reconsiderar nuevamente.

## I

El problema que movió a la Asamblea Legislativa a reformar de manera abarcadora el sistema de personal del servicio público en 1975 fue la profunda insatisfacción que el sistema entonces vigente causaba a sus integrantes. Ello desmerecía la calidad de los servicios públicos. La naturaleza centralizada del antiguo sistema resultaba ya inadecuada para responder a las necesidades de una masa trabajadora que había crecido en los últimos veinte años de 75,000 a cerca de 185,000 empleados. La creciente diversidad y complejidad de las gestiones públicas necesarias para atender debidamente el desarrollo económico y social de Puerto Rico trajo como resultado que un número cada vez mayor de empleados públicos fuesen colocados fuera del Servicio por Oposición —única categoría regida estrictamente por el principio de mérito— en aras de dotar a las nuevas entidades gubernamentales que iban surgiendo de la flexibilidad operacional necesaria para el desarrollo eficaz de sus programas. Como consecuencia de ello, únicamente quedaron cubiertos por el principio de mérito

---

(2) .　　.　　.　　.　　.　　.　　.　　.

(3) Los empleados de agencias o instrumentalidades del Gobierno que funcionen como empresas o negociados privados.

(4) Los empleados de agencias o instrumentalidades del Gobierno que tengan derecho a negociar colectivamente mediante leyes especiales y

(5) .　　.　　.　　.　　.　　.　　.　　."

alrededor de una tercera parte de los empleados públicos, 60,000 de un total de 185,000. Aponte Pérez, *Armonización del Principio de Mérito*, 35 Rev. C. Abo. P.R. 721, 723. Tanto el sistema de personal como el principio de mérito quedaron, por ende, en descrédito. Fue precisamente para remediar esta situación que la Oficina de Personal preparó el anteproyecto de ley que sirvió de base a los proyectos originalmente sometidos a la consideración de las Cámaras Legislativas: el P. de la C. 1633 y el P. del S. 1428. Oficina de Personal, *Ley de Personal del Servicio Público de Puerto Rico*, (Anteproyecto), Informe Explicativo, febrero 1975, págs. 1–2. Véanse, además, los informes de las Comisiones de Gobierno y Derechos Civiles del Senado sobre el P. del S. 1428 y de las Comisiones de Gobierno, Trabajo, Jurídico Penal y Hacienda de la Cámara sobre el mismo.

El esquema de organización concebido en dicho anteproyecto proponía un solo sistema de personal basado en el principio de mérito que habría de cubrir a todas las agencias del Gobierno, sin excepción alguna. El nuevo esquema dividía el Sistema de Administración de Personal en una Administración Central —integrada por todas las agencias cuyo personal estaba entonces comprendido en el Servicio por Oposición— y los Administradores Individuales, estructura creada para acomodar las necesidades de flexibilidad y autonomía de los municipios y otras entidades gubernamentales cuyo personal estaba incluido en el Servicio Exento y en el Servicio sin Oposición. La Autoridad de los Puertos aparecía expresamente incluida en el proyecto como un administrador individual. Sec. 5.3 (20).

La Asamblea Legislativa, sin embargo, modificó este esquema de organización al adicionar la Sec. 10.6, citada en el escolio (5), expresamente excluyendo de las disposiciones de la ley a: (1) la Rama Legislativa, (2) la Rama Judicial, (3) los empleados de agencias o instrumentalidades del Gobierno que funcionen como empresas o negociados privados, y

(4) los empleados de agencias o instrumentalidades del Gobierno que tengan derecho a negociar colectivamente mediante leyes especiales. La exclusión de las ramas de gobierno se efectuó por respeto al principio de separación de poderes y la exclusión de las agencias públicas, en evitación de cualquier conflicto que pudiera surgir entre las disposiciones de la ley y los convenios colectivos que con respecto a la gran mayoría de los empleados regían en dichas agencias. Debe advertirse, sin embargo, que tal exclusión no afectó la aplicación del principio de mérito a dichas agencias, pues expresamente dispuso el Legislador en la mencionada Sec. 10.6 que:

Las agencias o instrumentalidades aquí excluidas bajo los incisos (3) y (4) deberán adoptar, con el asesoramiento de la Oficina de Personal, y dentro de los próximos 120 días de la aprobación de esta ley, *un reglamento de personal incorporando el principio de mérito que regirá las normas de personal de aquellos empleados no cubiertos por convenios colectivos.* Copia de los reglamentos así adoptados serán enviados a la Asamblea Legislativa de Puerto Rico.

.    .    .    .    .    .    .    .

(Énfasis nuestro.)

El mandato a que se refiere el párrafo anteriormente transcrito, analizado a la luz de los principios de política pública proclamados con carácter general en la Sec. 2.1 de la ley, ([6]) revela sin duda la clara intención legislativa de efectuar la armónica instrumentación de uno de los principales objetivos de la ley: extender los beneficios de una administración de personal basada en el principio de mérito al mayor número posible de sectores públicos. A esos fines le impuso a dichas

---

([6]) "La política pública del Estado Libre Asociado de Puerto Rico en lo relativo al personal del servicio público, es la que a continuación se expresa:

(1) *Establecer el mérito como el principio que regirá todo el servicio público,* de modo que sean los más aptos los que sirvan al Gobierno y que *todo empleado* sea seleccionado, adiestrado, ascendido y retenido en su empleo en consideración al mérito y a la capacidad, sin discrimen por razones de raza, color, sexo, nacimiento, edad, origen o condición social, ni por ideas políticas o religiosas." (Énfasis nuestro.)

agencias la indefectible obligación de administrar su personal no unionado de conformidad con el principio de mérito, aun cuando en atención a sus particulares circunstancias quedaran efectivamente excluidas de las restantes disposiciones de la ley. Téngase presente en este sentido, que el principio de mérito existe únicamente en virtud de y de conformidad a como ha sido formulado en la Ley de Personal.

■ El historial de la medida confirma que fue ésta y no otra la intención legislativa. Los antecedentes de la ley destacan la importancia que para sus objetivos representaba la reafirmación del principio de mérito como norma rectora en la administración de personal y su extensión de manera uniforme a todos los sectores del servicio público. Así, el Informe Explicativo del anteproyecto propuesto por el Gobernador a la Asamblea Legislativa advirtió claramente el propósito de extender el principio de mérito "a todos los sectores del servicio público: empleados estatales —incluyendo los de las corporaciones públicas— empleados municipales". En su ponencia en torno al P. del S. 1428, la entonces Directora de Personal, Sra. Milagros Guzmán, también puntualizó este propósito al expresar:

Ese es un concepto tan universal que para la empresa privada significa aplicarlo para mejorar su productividad, su eficiencia y su ganancia. Pero para el Gobierno no es sólo aplicarlo para mejorar el servicio que prestamos, sino que en adición a eso en el Gobierno tenemos una obligación moral de ofrecer a los ciudadanos una oportunidad libre de competir, de demostrar sus capacidades.

Por eso esta ley no sólo define ese principio de mérito a diferencia de la ley actual, lo define claramente . . . , sino que lo extiende a todo el servicio público.

Igualmente el Informe de las Comisiones de Gobierno y de Derechos Civiles del Senado al P. del S. 1428 afirma en la página 27 que "el principio de mérito se hace extensivo a todo el servicio público de Puerto Rico (y no solamente a la tercera parte que ahora tiene esta protección)". El Informe de

las Comisiones de Gobierno, Trabajo, Jurídico Penal y Hacienda de la Cámara, en la página 18, ratifica dicho propósito.

Finalmente, en el debate que se sostuvo en el Senado sobre el P. del S. 1428, el Senador Latoni, Pres. de la Comisión de Gobierno, a preguntas de la Senadora Nazario de Ferrer expresó:

SRA. NAZARIO DE FERRER: Señala el compañero que el principio de mérito ahora se está implantando y describiendo. Sin embargo, por otro lado acepta que existía, aunque fuera imperfecto. Que había una proporción de sesenta mil, de ciento ochenta y tres mil cubiertos por ello. *Ahora mismo también está excluyendo un número de agencias que usted mismo acaba de exponer.*

.    .    .    .    .    .    .    .

SR. LATONI RIVERA: Sí, ¿pero la compañera me permitiría clarificar algo? Nosotros estamos excluyendo *solamente treinta mil servidores públicos que en este momento tienen el derecho a la negociación colectiva* que constituyen, como ella muy bien podrá darse cuenta, menos de una sexta parte de ciento ochenta y cuatro mil. (Énfasis suplido.)

Si alguna duda quedara sobre la extensión del principio de mérito a las agencias excluidas en cuanto a su personal no unionado, la Ley Núm. 1 de 17 de julio de 1979 la disipa. Esta ley enmendó, entre otras, la Sec. 2.1(2) de la nueva Ley de Personal, para hacer claro que los empleados de las agencias excluidas por la Sec. 10.6 no están cubiertos por el Sistema de Personal en ella establecido.[7] Pero no obstante haber hecho esta aclaración, mantuvo intacta la decla-

---

[7] La Sec. 2.1(2) lee ahora:

".    .    .    .    .    .    .    .

2. A fin de asegurar la extensión y el fortalecimiento del principio de mérito a todos los sectores del servicio público puertorriqueño, todos los empleados públicos, sean éstos empleados estatales, o municipales a excepción de los excluidos en el Artículo 10, Sección 10.6 de esta ley, estarán cubiertos por un solo sistema de personal, establecido para hacer cumplir el principio de mérito, el cual se conocerá como Sistema de Personal del Servicio Público."

ración de política pública contenida en la Sec. 2.1(1) antes transcrita —donde establece que el principio de mérito regirá en todo el servicio público— y más importante aún, adicionó al Art. 8 del estatuto el inciso 25 para definir el concepto "servicio público", incluyendo específicamente en él a las agencias excluidas por la Sec. 10.6. (⁸)

## II

Hasta aquí la controversia parecería de fácil solución, pues la prohibición contra transacciones de personal durante los períodos pre y post eleccionarios de dos meses fue estatuida precisamente para "asegurar la fiel aplicación del mérito en el servicio público", el cual, como hemos visto, comprende a la Autoridad de los Puertos. (⁹)

La extensión del principio de mérito a las agencias excluidas del Sistema de Personal, sin embargo, es tan solo el trasfondo de la controversia que aquí nos ocupa. Su solución depende más directamente de la validez del Reglamento de Personal aprobado por la Autoridad de los Puertos el 17 de noviembre de 1976, en virtud del cual se clasificó al recurrido Reyes Coreano como empleado de carrera.

La opinión emitida el 31 de mayo de 1979 determinó la validez de dicho reglamento sólo por el fundamento de que la

---

(⁸) El Art. 8, inciso 25, define el concepto "Servicio Público" en la siguiente forma:

" 'Servicio Público': significará las agencias incluidas dentro del Sistema de Personal que se crea en virtud de esta ley, las agencias excluidas en la Sección 10.6 de esta ley y cualquier otra instrumentalidad o subdivisión política que se creare en el futuro."

(⁹) Aunque desde una perspectiva técnica pudiera argüirse que la veda no forma parte del principio de mérito por no estar incluida en sus áreas esenciales su incorporación en el artículo cuarto de la ley —donde se enumeran y definen dichas áreas— adicionado ello al expreso propósito legislativo de tal prohibición, sostiene sin duda la conclusión de que la veda es elemento consustancial al mérito y por tanto parte esencial del mandato legislativo dirigido a las agencias excluidas. Sería ilógico pensar que fuera la intención legislativa extender el principio de mérito a dichas agencias sin que tal extensión incluyese a fortiori el mecanismo legal específicamente diseñado y estatuido para asegurar su correcta aplicación.

Ley de Personal de 1975 había excluido de sus disposiciones a las agencias cuyos empleados, como los de la Autoridad de los Puertos, tienen derecho a negociar colectivamente en virtud de leyes especiales, por lo que concluyó que la prohibición contenida en la Sec. 4.7, *supra*, no era de aplicación al caso de autos. Aunque el fundamento invocado es correcto, la conclusión no debe prevalecer.

Igualmente no debe prevalecer nuestro dictamen del 20 de noviembre de 1979 que anuló el reglamento en cuestión en virtud de la extensión del principio de mérito a la Autoridad de los Puertos, pues no tomó en consideración el claro mandato de ley al efecto de que las agencias excluidas incorporaran dicho principio a sus reglamentos de personal dentro de los 120 días siguientes a su fecha de vigencia. Consideraron, además, ambos dictámenes, que la clasificación del recurrido Reyes Coreano como empleado de carrera en dicho reglamento constituía una transacción de personal de las prohibidas por la veda eleccionaria.

Sostiene la Autoridad de los Puertos que el reglamento del 17 de noviembre de 1976 es nulo por haber sido aprobado dentro del período de veda establecido en la antes transcrita Sec. 4.7 de la ley, y, por otro lado, que el reglamento resulta nulo porque al momento de su aprobación aún no estaba en vigor la nueva ley, por no haber promulgado aún la Oficina Central de Administración de Personal la reglamentación necesaria para hacerla efectiva. El argumento de nulidad se monta sobre una disposición específica de la ley a la misma vez que se reclama que la ley no había entrado aún en vigor.

Arguye la Autoridad que no habiendo entrado en vigor la nueva ley hasta el 30 de noviembre de 1976 —fecha en que se presentó en el Departamento de Estado el Reglamento relativo a las áreas esenciales al principio de mérito— y estando, en consecuencia, aún en vigor la anterior Ley de Personal que clasificaba en el Servicio Exento a todos los empleados de la Autoridad, no podía ésta aprobar el 17 de noviembre de 1976

un reglamento transfiriendo personal del Servicio Exento al servicio de carrera, en contra de la ley de personal entonces vigente.

Es de rigor considerar el alcance de la cláusula de vigencia de la nueva ley, Sec. 10.7 (3 L.P.R.A. sec. 1301) y de la cláusula de exclusión, Sec. 10.6, *supra*, para determinar cuándo entraron en vigor las disposiciones pertinentes de dicha ley y, a la vez, precisar si la fecha de vigencia del estatuto afectó la validez del reglamento aprobado por la Autoridad de los Puertos el 17 de noviembre de 1976.

■ La Sec. 10.7 provee en lo pertinente:

(1) Todo lo referente a la estructuración de la Oficina comenzará a regir inmediatamente después de la aprobación de esta ley.

(2) *Las demás disposiciones entrarán en vigor una vez aprobada y promulgada la reglamentación necesaria para instrumentar [sic] esta ley, la cual deberá hacerse en un período no mayor de doce meses a partir de la aprobación de esta ley.*

(Énfasis nuestro.)

Como puede verse, la ley dispuso en términos expresos un período no mayor de doce meses para la vigencia de todas sus disposiciones. Como la ley fue aprobada el 14 de octubre de 1975, todas sus disposiciones sin fecha específica de vigencia anterior tenían que entrar en vigor con la aprobación y promulgación de la reglamentación necesaria, pero nunca más tarde de doce meses a partir de esa fecha, o sea, del 14 de octubre de 1976. ([10]) El reglamento relativo a las áreas esenciales al principio de mérito fue aprobado dentro de dicho

---

([10]) El Art. 8 del Código Civil, 31 L.P.R.A. sec. 8, dispone que cuando en la ley se habla de meses se entiende que éstos son de 30 días, y, por tanto, los 12 meses vencerían el 9 de octubre. Por otro lado, el historial legislativo revela que la intención del Legislador era que el término fuese de un año (véanse los informes de comisiones del Senado y la Cámara, págs. 50 y 42 respectivamente), término que por norma se interpreta como de 365 días. No tiene consecuencia alguna, sin embargo, esta diferencia de cinco días en la computación del término de vigencia.

período, el 31 de agosto de 1976, pero no fue presentado en el Departamento de Estado hasta el 30 de noviembre de 1976. El argumento de la Autoridad de los Puertos de que la ley no entró en vigor hasta esa fecha no toma en cuenta los términos expresos de la citada Sec. 10.7, en virtud de la cual se fijó un período máximo de doce meses para que sus disposiciones entrasen en vigor. La promulgación posterior del mencionado reglamento por el Departamento de Estado no puede alterar dicho período. La cuestión, después de todo, no tiene mayor trascendencia, pues aun si aceptáramos que la ley no entró en vigor sino hasta el 30 de noviembre de 1976 y que en esa fecha comenzaba a correr el término de 120 días concedídole a la Autoridad de los Puertos para aprobar un nuevo Reglamento de Personal para su personal no unionado incorporando el principio de mérito, el hecho que lo hubiese aprobado dos semanas antes no lo habría viciado de nulidad como sostiene la recurrente. Es importante advertir que la fecha de vigencia de la ley sólo marca el punto de partida para la computación del término dentro del cual las agencias excluidas tenían que aprobar sus nuevos reglamentos, y, que en forma alguna la fecha de vigencia alteró la facultad de dichas agencias para adoptar reglas de administración en relación con su personal no unionado, facultad que derivan, no de la Ley de Personal, sino de sus respectivas leyes orgánicas. Véase, en el caso específico de la Autoridad de los Puertos, el Art. 6 inciso (m) y el Art. 7 inciso (a) de la Ley Núm. 125 de 7 de mayo de 1942 (23 L.P.R.A. secs. 336(m) y 337(a)). Existiendo facultad en ley para la Autoridad de los Puertos aprobar el reglamento del 17 de noviembre de 1976 con entera independencia de la vigencia de la nueva Ley de Personal, y habiendo en efecto incorporado el principio de mérito según definido en dicha Ley, la vigencia posterior del estatuto, por tanto, no podía tener otra consecuencia que la de revalidar dicho reglamento, quedando cumplido con ello de inmediato el mandato legislativo de la Sec. 10.6.

Podría argüirse que según el texto de la Sec. 10.6 la adopción de los nuevos reglamentos de personal debía efectuarse dentro de los 120 días a partir de la aprobación de la ley y no a partir de su fecha de vigencia. Se ha interpretado administrativamente, sin embargo, que dicho plazo no podía comenzar a correr sino a partir de la fecha de vigencia de la ley. En ese sentido, se han expresado tanto el anterior como el actual Secretario de Justicia en opiniones emitidas el 20 de enero de 1976 y el 7 de febrero de 1977. Dicha interpretación fue, además, adoptada por el actual Director de la Oficina de Personal, Sr. José Roberto Feijóo, en su Carta Normativa Núm. 7-77 obrante en autos. Consideramos razonable esta interpretación porque guarda armonía con el diseño operacional de la ley. La Oficina Central no podía brindar el asesoramiento necesario a las agencias excluidas sin haber estructurado antes su organización interna y haber definido con precisión las normas generales para incorporar el principio de mérito al Sistema de Personal, para lo cual debía celebrar vistas públicas, auscultar la opinión de la ciudadanía en general y de los empleados públicos en particular, y, celebrar reuniones informales con éstos para facilitarles expresar sus puntos de vista. Secs. 3.1 a 3.5 (3 L.P.R.A. secs. 1321 a 1325) y Sec. 4.1 (3 L.P.R.A. sec. 1331). Ello no ocurrió hasta el 31 de agosto de 1976 cuando el Gobernador aprobó finalmente el reglamento relativo a las áreas esenciales al principio de mérito. La interpretación literal de la Sec. 10.6 impondría una condición de imposible cumplimiento a las agencias excluidas exigiéndoles la preparación de sus reglamentos dentro de un plazo en que la Oficina Central no podía brindar el asesoramiento necesario. No debemos imputar tal despropósito a la Asamblea Legislativa.

En resumen, las disposiciones de la nueva Ley de Personal entraron en vigor el 14 de octubre de 1976 y el término de 120 días durante el cual las agencias excluidas debían preparar un reglamento incorporando el principio de

mérito empezó a contar a partir de esa fecha. En consecuencia, el reglamento adoptado por la Autoridad de los Puertos el 17 de noviembre de 1976 se hizo dentro del término previsto para ello en la ley.

## III

■ El hecho de que la aprobación del reglamento por la Autoridad de los Puertos se efectuara dentro del período eleccionario no puede afectar su validez, pues se hizo en estricto cumplimiento del mandato legislativo contenido en la Sec. 10.6 de la ley. La veda eleccionaria es sólo uno de los elementos que componen el sistema de mérito que la Autoridad de los Puertos venía obligada a adoptar. La clasificación de sus empleados según las categorías del nuevo sistema —de carrera o de confianza— es otro elemento de no menor importancia. Es inaceptable una interpretación que convierta la veda en insalvable obstáculo a la incorporación del principio de mérito, según el mandato legislativo.

■ No está en disputa que el reglamento aprobado por la Autoridad de los Puertos el 17 de noviembre de 1976 cumplió fielmente con el principio de mérito conforme se define este concepto en la nueva ley, a saber, ". . . que todos los empleados públicos deben ser seleccionados, ascendidos y retenidos y tratados en todo lo referente a su empleo sobre la base de la capacidad, sin discrimen por razones de raza, color, sexo, nacimiento, edad, origen o condición social, ni a [sic] sus ideas políticas o religiosas". La nueva Junta de Directores de la Autoridad de los Puertos adoptó íntegramente dicho reglamento, modificándolo al sólo efecto de aumentar el número de empleados de confianza de ocho a treinticuatro, pero sin alterar su estructura ni contenido esencial. (11)

El reglamento clasificó al recurrido Reyes Coreano como empleado de carrera. La clasificación fue propia y nada tuvo

---

(11) El reglamento sufrió varias enmiendas adicionales de carácter insustancial.

de arbitraria, pues las funciones que desempeñaba el recurrido no eran de naturaleza normativa o de confianza. Conviene reproducir al respecto la descripción del puesto que aparece del *exhibit* III del recurrido.

AYUDANTE ESPECIAL DIRECTOR EJECUTIVO AUXILIAR
*DESCRIPCION GENERAL DE DEBERES:*

Asiste al Director Ejecutivo Auxiliar en la realización de tareas administrativas variadas. Realiza tareas afines requeridas.

*ASPECTOS DISTINTIVOS DEL TRABAJO:*

El incumbente en esta clase realiza trabajos administrativos generales para los cuales se requiere la aplicación de conocimientos de las funciones y normas de la organización, conocimientos generales sobre administración y un alto grado de responsabilidad y discreción. Recibe supervisión mediante consultas verbales y a través del análisis de informes rendidos para comprobar los resultados obtenidos.

*EJEMPLOS DE TRABAJO:*

1— Redacta correspondencia general para la firma del Director Ejecutivo Auxiliar.

2— Hace seguimiento a la correspondencia y asuntos pendientes y transmite información que pasa o se origina en la Oficina del Director Ejecutivo Auxiliar a los diferentes Jefes de Departamentos, Oficinas y Divisiones.

3— Atiende casos misceláneos diversos asignados por su Supervisor.

4— Resuelve problemas misceláneos que le asigne su Supervisor inmediato.

. . . . . . . .

■ Un somero examen de la anterior descripción es suficiente para demostrar que las funciones inherentes al puesto que ocupaba el recurrido Reyes Coreano el 17 de noviembre de 1976 no tenían nada que ver con la formulación de política pública de la Autoridad de los Puertos ni con el asesoramiento o prestación de servicios directos al jefe de dicha agencia. ([12])

---

([12]) El tribunal de instancia no entró a considerar este punto a pesar

Es por eso que *Díaz González* v. *Tribunal Superior*, 102 D.P.R. 195 (1974), no guarda analogía con el caso de autos, pues allí se trataba de una empleada que desempeñaba funciones normativas y de confianza y cuyo puesto se clasificó arbitrariamente en el Servicio por Oposición. Por el contrario, la clasificación en el caso de autos fue una racional y lógica que se ajustó a la naturaleza de las funciones que desempeñaba el recurrido Reyes Coreano y que bajo cualquier sistema racional de mérito tenían forzosamente que clasificarse dentro del servicio de carrera. Así lo hizo la propia Ley de Personal que al entrar en vigor el 14 de octubre de 1975, convirtió inmediatamente en empleados de carrera a todos aquellos empleados de los administradores individuales —anteriormente en el Servicio Exento y en el Servicio sin Oposición— que de acuerdo con los criterios de la ley no ejercían funciones de confianza. Sec. 9, incisos (4) y (6), 3 L.P.R.A. sec. 1421(4) y (6).

▮ Puntualizamos que la *reclasificación de Reyes Coreano se hizo como resultado de la transición del sistema existente bajo la anterior ley al nuevo sistema ordenado por la Ley de Personal de 1975. Operada dicha transición y una vez en funcionamiento el nuevo sistema de mérito, ciertamente sería nula cualquier transacción de personal efectuada dentro del período de veda, independientemente de sus méritos intrínsecos. (13)

▮ Finalmente, carece de méritos el argumento adicional de la Autoridad de que se le otorgó a Reyes Coreano status de empleado de carrera sin haber cumplido con los requisitos de examen, entrevista y período probatorio recogi-

---

de que obraba en autos el *exhibit* III presentado por el recurrido, y no obstante la recurrente no haber aportado prueba alguna tendente a demostrar que la descripción de las funciones del puesto contenida en dicho *exhibit* no era correcta.

(13) Salvo, por supuesto, en los casos excepcionales autorizados en la propia ley. Sec. 4.7.

dos en el propio reglamento del 17 de noviembre de 1976. Es evidente que tales requisitos reglamentarios sólo podían tener efecto prospectivamente, o sea, en cuanto al reclutamiento de nuevo personal. Ningún efecto podían tener sobre la clasificación de un empleado en funciones al momento de su promulgación, cuyo nombramiento había sido válidamente realizado de acuerdo a las normas y según los procedimientos anteriormente en vigor y cuya capacidad había sido comprobada durante años de servicio.

*Por las anteriores razones se dictará sentencia dejando sin efecto la que dictáramos el 20 de noviembre de 1979 y confirmando la dictada por el tribunal de instancia.*

El Juez Presidente Señor Trías Monge emitió opinión separada concurriendo y disintiendo en parte. El Juez Asociado Señor Díaz Cruz emitió opinión separada concurriendo en el resultado.

—O—

Opinión concurrente del Juez Asociado Señor Díaz Cruz.

San Juan, Puerto Rico, a 20 de junio de 1980

El recurrido Reyes Coreano es un servidor público, empleado regular del Gobierno durante 17 años, los últimos tres con la Autoridad de los Puertos en el servicio exento, hasta que por Reglamento adoptado por dicha corporación pública el 17 noviembre, 1976 su puesto fue clasificado de carrera; ascendido con mayor responsabilidad y retribución por la nueva administración que advino al poder como resultado de los comicios de 1976, y finalmente despedido sin cargos ni audiencia efectivo el 31 mayo, 1977 por considerarse su puesto de confianza, y no obstante la Autoridad haber adoptado un segundo Reglamento el 17 marzo, 1977 que ratificó el anterior y mantuvo el puesto del recurrido fuera de los designados como de confianza.

El Tribunal Superior, Sala de San Juan (Peter Ortiz, J.), expidió *injunction* el 24 agosto, 1978 ordenando a la Autori-

dad reinstalar al empleado en un puesto igual al que ocupaba, con abono de sueldos que el despido le impidió percibir, y por sentencia y opinión de 31 mayo, 1979 confirmamos la sala de instancia. Reconsideramos el 20 noviembre, 1979 y dejamos sin efecto nuestra primera sentencia, pero a solicitud de reconsideración del empleado recurrido, oímos argumento en vista oral el 19 febrero, 1980 quedando dicha moción sometida con escrito suplementario de argumentación que solicitamos del recurrido.

La opinión de este Tribunal de 20 noviembre, 1979 en reconsideración, reclama como fundamentos de decisión los siguientes: (1) que el recurrido nunca completó los trámites exigidos por el Art. 103.3 de ambos Reglamentos de la Autoridad de Puertos (17 nov., 1976 y 17 marzo, 1977) para entrar al Servicio de Carrera; (2) que la extensión del principio de mérito a todos los sectores del empleo público, y con él la prohibición de transacciones de personal en las inmediaciones pre y post eleccionarias, excluye regularidad en el cambio de clasificación del puesto del recurrido. Ambos fundamentos son contrarios a la legislación especial que gobierna este caso.

No hay que detenerse ante la insinuación de que la aplicación de la Sec. 4.7 de la Ley de Personal (período de veda electoral) a sólo parte del servicio público "puede encerrar serios problemas constitucionales" porque el reglamento exigido de las corporaciones y agencias excluidas, incorporando el principio de mérito necesariamente deberá comprender la prohibición de transacciones de personal en las inmediaciones pre y post eleccionarias, quedando todos los empleados bajo una norma común.

La transición en el sistema de personal del Gobierno, puesta en marcha por la aprobación de la Ley Núm. 5 de 14 octubre, 1975, se caracteriza por un cuidadoso ordenamiento dirigido a la protección de los derechos del servidor público. Al efecto, el Art. 9 de la Ley (3 L.P.R.A. sec. 1421) en

nueve incisos traza la evolución del anterior al nuevo régimen de personal de los empleados que ocuparen puestos en el Servicio por Oposición, los de nombramiento transitorio o de emergencia y los que procedan del Servicio sin Oposición o del Exento. Al confrontar la situación especial de aquellos empleados de agencias y corporaciones públicas excluidas, que no tienen la protección de la negociación colectiva ni la que disfruta el restante personal de servicio público, ordenó el legislador en la Sec. 10.6 (4) que dichas corporaciones y agencias adoptaran, dentro de los 120 días siguientes a la aprobación de la Ley, un reglamento de personal incorporando el principio de mérito. ([1]) La orfandad de estos empleados para quienes no había protección de ley, ni de reglamento, ni de convenio colectivo fue destacada en *Pastor Lozada* v. *Director Ejecutivo*, 101 D.P.R. 923, 932 (1974), y para llenar ese vacío cumpliendo el mandato legislativo, la Autoridad de los Puertos aprobó el Reglamento de 17 noviembre, 1976 mediante el cual clasificó el puesto del recurrido en el Servicio de Carrera. Con plena facultad para así actuar, derivada de su estatuto orgánico (Ley Núm. 125 de 7 mayo, 1942 (23 L.P.R.A. sec. 331 y ss.)), dicho cambio reflejó el criterio de la corporación pública al evaluar la idoneidad y competencia del recurrido como servidor público durante 17 años, desde el 1° julio, 1974 con la Autoridad de los Puertos, y la futilidad de someterlo a los requisitos ordenados en el Art. 103.3 de dicho Reglamento para adquirir el status de empleado de carrera en el momento mismo en que, por vez primera, adopta tal reglamentación. Por ley, la Autoridad es completamente

---

([1]) Según la Sec. 4.1 de la Ley (3 L.P.R.A. sec. 1331) las áreas esenciales al principio de mérito son: (1) Clasificación de Puestos; (2) Reclutamiento y Selección; (3) Ascensos, Traslados y Descensos; (4) Adiestramiento; (5) Retención. El reglamento, que tiene fuente propia de autoridad en la Ley Orgánica de la Corporación, fue aprobado el 17 noviembre, 1976, dentro de los 120 días siguientes al 14 octubre, 1976 fecha en que empezó a regir la Ley de Personal de 1975, realizándose en la práctica la exigencia de la Sec. 10.7 (2) de la Ley.

autónoma para tomar decisiones respecto a la urgencia y necesidad de los cambios de su personal; (²) por estar expresamente excluida del sistema de administración central no tiene el recurso provisto en el Art. 4.4(c) de la Ley, 3 L.P.R.A. sec. 1334(c), para llenar plazas *sin oposición* (³)

(²) La facultad de la Autoridad de los Puertos para realizar cambios de categoría de personal, en armonía con los más altos intereses de la corporación, de sus empleados, y de sus servicios al público es incuestionable, a la luz de su ley orgánica (Núm. 125 de 7 mayo, 1942 (23 L.P.R.A. sec. 331 y ss.)) que sobre el particular ordena:

Art. 7.—*Funcionarios y empleados.*

"(a) Nombramientos, separaciones, ascensos, traslados, ceses, reposiciones, suspensiones, licencias, y cambios de categoría, remuneración o título de los funcionarios y empleados de la Autoridad, *se harán y permitirán como dispongan las normas y reglamentos* que prescriba el Administrador de Fomento Económico en consulta con el jefe de personal o el funcionario ejecutivo de la Oficina de Personal de Puerto Rico, conducente a un plan general análogo, en tanto el Administrador de Fomento Económico lo estime compatible con los más altos intereses de la Autoridad, de sus empleados y de sus servicios al público, al que pueda estar en vigor para los empleados del Gobierno estadual al amparo de las leyes de Personal de Puerto Rico. El *Administrador de Fomento Económico y los funcionarios y empleados de la Autoridad tendrán derecho al rembolso de los gastos necesarios de viaje, o en su lugar a las dietas correspondientes que sean autorizados o aprobados de acuerdo con los reglamentos del Administrador de Fomento Económico para la Autoridad. Los funcionarios y empleados de cualquier junta, comisión, agencia o departamento del Estado Libre Asociado de Puerto Rico que sean nombrados por la Autoridad y que, con anterioridad a tal nombramiento fueran beneficiarios de cualquier sistema de fondo de ahorro y préstamo, continuarán teniendo después de dicho nombramiento los derechos, privilegios, obligaciones y *status*, respecto a los mismos, que la ley prescribe para los funcionarios y empleados que ocupan posiciones similares en el Gobierno estadual, a menos que, en el término de seis (6) meses después de tal nombramiento, dichos funcionarios y empleados o cualquiera de ellos signifique la intención de renunciarlos." 23 L.P.R.A. sec. 337(a). (Énfasis nuestro.)

(³) Para las agencias comprendidas en el sistema provee el citado Art. 4.4(c) de la Ley:

"(c) Se podrán autorizar ascensos sin oposición cuando las exigencias especiales y excepcionales del servicio, y las cualificaciones especiales de los empleados así lo justifiquen, previa la aprobación del examen correspondiente. Para autorizar ascensos sin oposición será requisito indispensable que no haya registro de elegibles y no pueda establecerse uno en tiempo razonable, o que haya razonable certeza de que sólo hay un candidato que reúne los requisitos."

cuando las exigencias particulares y excepcionales del servicio y las cualificaciones especiales de los empleados así lo justifiquen, faltando un registro de elegibles y tiempo para establecerlo. Al cambiar, por reglamento, la clasificación del puesto del recurrido del servicio exento al de carrera, utilizó el único canal abierto para atender a sus intereses y a las necesidades del servicio, que no podían sacrificarse ni posponerse por el hecho de incluir en el mismo Reglamento de 1976 un Art. 103.3 que fijara requisitos de oposición y libre competencia para sus empleados de carrera. No se ha demostrado que esta solución prospectiva a la función de instituir un servicio de carrera en la Autoridad de Puertos resultara lesiva al servicio público y al trato justo que merecen sus empleados; por el contrario, la nueva administración, producto del cambio de Gobierno en 1977 ratificó la disposición que nos concierne en el Reglamento aprobado el 17 marzo, 1977. Tanto bajo la anterior, como la corriente Administración, la Autoridad de Puertos actuó en acatamiento de un definido estado de derecho determinado por su exclusión de la Ley de Personal Núm. 5 de 1975, el mandato legislativo contenido en la ley de su creación (Núm. 125 de 7 mayo, 1942, *supra*) y la interpretación de dicho estatuto en la jurisprudencia declarativa de que la Ley de la Autoridad de Puertos dispone que los nombramientos y ceses se harán conforme a normas y reglamentos conducentes a un plan general ". . . 'análogo' (no exacto) de administración de personal al que existe para el Gobierno de Puerto Rico; . . . ." (*Pastor Lozada* v. *Director Ejecutivo*, supra, pág. 931, en cuya decisión se explica que "[e]l propósito de eximir de la reglamentación de la Ley de Personal y sus reglamentos a las corporaciones públicas fue el de capacitar a dichas corporaciones y organismos para actuar con la flexibilidad y rapidez que sus obligaciones y necesidades requieren, debido a la naturaleza de su trabajo". *Ibid.*, pág. 930.)

No menos determinante del estado de derecho que pro-

movió la adopción de ambos reglamentos, el de 1976 y el de 1977, surge la disposición en el Art. 10.6 de la Ley de Personal de 1975 instruyendo que las agencias y corporaciones excluidas debían adoptar un reglamento de personal incorporando el principio de mérito que sentaría normas de personal para aquellos empleados *no cubiertos por convenios colectivos*. Ambas juntas de directores de la Autoridad cumplieron adoptando Reglamentos en 1976 y 1977 que siguen el principio de mérito, sin que para ello fuera necesario negar permanencia y seguridad al personal regular que hasta el 1976 había servido con eficiencia e idoneidad a la corporación, actuación autorizada por la ley orgánica de la corporación.

No existe, en nuestra legislación de servicio civil, la uniformidad férrea que coarta la opinión en reconsideración. La *Introducción* del Reglamento de Personal previene sobre la existencia de peculiaridades presentes en diversos sectores del servicio y la presencia de una estructura jurídica y tradición administrativa que promueven, en ocasiones, objetivos discrepantes, la cual considera realidad vital que en modo alguno debe erosionar la adaptabilidad del principio de mérito. Su texto es iluminante. Dice:

El reglamento contiene el diseño de la estructura administrativa en la cual ha de asentarse y crecer el sistema de administración de personal para todo el Gobierno del Estado Libre Asociado de Puerto Rico, inclusive sus corporaciones públicas, instrumentalidades y municipios. Define el principio de mérito en las áreas que le son consustanciales e indispensables: clasificación de puestos; reclutamiento y selección de servidores públicos, ascensos, traslados y descensos; adiestramiento para el servicio público; y la retención de empleados en el servicio. Dentro del concepto general del principio de mérito, se reconocen aquellas variantes y modalidades que es de rigor aceptar a fin de que este principio esencial quede vigente aun dentro de las peculiaridades que estén presentes en diversos sectores del servicio. Así por ejemplo, se toma conocimiento y conciencia del hecho real de que tanto la estructura jurídica como la tradición administrativa en Puerto Rico han tendido a establecer

sistemas varios sobre premisas diversas y orientados hacia objetivos a veces discrepantes. Este Reglamento provee para que, aun dentro de esas circunstancias, prevalezca el principio de mérito. Reglamento, *ibid.*, pág. 2.

La dificultad básica con el razonamiento de la opinión en reconsideración (20 nov., 1979) radica en su reiterado y extendido esfuerzo en aplicar a la Autoridad de Puertos, con rigor de uniformidad y letra estricta, normas y principios enunciados en la Exposición de Motivos y Declaración de Política Pública de la Ley de Personal de 1975, cerrando los ojos ante la drástica exclusión de dicha corporación de tales ordenamientos por la tersa afirmación de su Sec. 10.6 que en lo relevante ordena:

Sección 10.6.—Exclusiones—

Las disposiciones de esta ley no aplicarán a las siguientes ramas, agencias e instrumentalidades del Gobierno:

(1) Rama Legislativa;

(2) Rama Judicial;

(3) Los empleados de agencias o instrumentalidades del Gobierno que funcionen como empresas o negociados privados;

(4) Los empleados de agencias o instrumentalidades del Gobierno que tengan derecho a negociar colectivamente mediante leyes especiales. *Leyes de Puerto Rico,* Edición Equity, año 1975, Parte 2, pág. 834.

La decisión en reconsideración incluyó lo que el legislador excluyó. Al amparo de esa inaceptable premisa, Reyes Coreano II repudia el cambio que le dio seguridad y permanencia al servidor público porque dicha "transacción de personal" se hizo al aprobarse el Reglamento de 17 noviembre, 1976 fecha comprendida dentro del período de veda de la Sec. 4.7 de la Ley, 3 L.P.R.A. sec. 1.337, que se extiende desde dos meses antes hasta dos meses después de la celebración de las elecciones generales. Véase *Ortiz* v. *Alcalde de Aguadilla,* 107 D.P.R. 819 (1978). Más aún, tan valiosa salvaguarda del principio de mérito tiene una flexibilidad que impone día a día las necesidades del servicio, y que toma cuerpo de excep-

ción en el tercer párrafo del citado Art. 4.7 con el siguiente lenguaje:

Se podrá hacer excepción de esta prohibición por necesidades urgentes del servicio, previa la aprobación del Director, conforme a las normas que se establezcan mediante Reglamento.

La Autoridad de los Puertos, excluida de la Ley de Personal, nunca podrá acudir al Director de la Oficina Central de Administración de Personal (O.C.A.P.) para una dispensa del Art. 4.7 que resuelva sus "necesidades urgentes del servicio", porque dicho funcionario carece de toda autoridad sobre esta corporación excluida. El propio Director de O.C.A.P., Sr. Feijóo, por ministerio de ley el primer guardador del principio de mérito, en su carta normativa Núm. 2-77 de 28 febrero, 1977 sobre "status de las agencias conforme a la Ley de Personal del Servicio Público de Puerto Rico", clasifica como *excluidas* de las disposiciones de dicha Ley, veinte agencias de la rama ejecutiva, entre ellas, y bajo el número 13, la Autoridad de los Puertos. ¿De qué modo va a cumplir esta corporación pública el mandato legislativo sobre administración de su personal en la Ley especial de su fundación, *supra*, si se pretende que también acate disposiciones contradictorias de una Ley de Personal de la que fue específicamente excluida? La prohibición de transacciones de personal próximas o retropróximas las elecciones generales no tiene mayor significado ni más fuerza coactiva que las demás importantes normas recogidas en la Ley de Personal que la Asamblea Legislativa decidió no aplicar a corporaciones cuyos empleados tengan derecho a la negociación colectiva.

Contrario al propósito original[4] de colocar a todos los

---

[4] La enmienda de 1979 excluyó la Policía en áreas esenciales al reformar la Sec. 4.4(9) de la Ley, que ahora dispone:

"En aquellos sistemas en que se utilice el concepto de rango, se podrá utilizar el traslado, descenso o degradación como medida disciplinaria siempre y cuando sus leyes orgánicas lo autoricen. En estos casos no se requerirá el consentimiento del empleado." (Art. 6, Ley Núm. 1 de 17 julio, 1979.)

empleados públicos bajo un régimen uniforme de principio de mérito, la autonomía de las agencias y corporaciones excluidas por disposición de ley ha sido fortalecida y la aplicación a ellas del principio de mérito, enervada, por enmienda de la Sec. 2.1(2) de la Ley de Personal introducida por Ley Núm. 1 de 17 julio, 1979 que expresamente eliminó las *corporaciones públicas* de su parte afirmativa y en su lugar incorporó la excepción de aquellos empleados excluidos por la Sec. 10.6. Mediante dicha enmienda de 1979 lo que ha fortalecido el legislador no es el principio de mérito, sino la exclusión de las agencias y organismos de la Sec. 10.6. Antes de la enmienda dicha Sec. 2.1(2), que es parte de la declaración de política pública, tenía el siguiente texto:

A fin de asegurar la extensión y el fortalecimiento del principio de mérito a todos los sectores del servicio público puertorriqueño, todos los empleados públicos, sean éstos empleados estatales, municipales, o de corporaciones públicas, estarán cubiertos por un solo sistema de personal, establecido para hacer cumplir el principio de mérito, el cual se conocerá como Sistema de Personal del Servicio Público.

La Ley Núm. 1 de 17 julio, 1979, luego de consignar en su Exposición de Motivos que ". . . cada agencia instrumenta la política pública mediante los poderes y facultades que le confiere su respectiva Ley Orgánica" y que "[e]n la implementación de esta ley desde su vigencia hace alrededor de año y medio, tanto nuestra Oficina como las agencias bajo su jurisdicción han comprobado que aunque filosóficamente cumple a cabalidad los objetivos y propósitos, en la práctica adolece de ciertas fallas y omisiones que han impedido su máxima utilización" reformó radicalmente el citado artículo de Declaración de Política Pública que ahora dice:

A fin de asegurar la extensión y el fortalecimiento del principio de mérito a todos los sectores del servicio público puertorriqueño, todos los empleados públicos, sean éstos empleados estatales, o municipales a excepción de los excluidos en el Artículo 10 Sección 10.6 de esta ley, estarán cubiertos por un solo

sistema de personal, establecido para hacer cumplir el principio de mérito, el cual se conocerá como Sistema de Personal del Servicio Público.

Con dicha enmienda el legislador simplemente conformó, mediante eliminación, la Declaración de Política Pública que antes abarcaba a *todos* los empleados públicos, con la Sec. 10.6 que excluye agencias e "instrumentalidades".

La exclusión reiterada, sin embargo, no significa enajenación de estas corporaciones del principio de mérito, porque la propia Sec. 10.6 de la Ley de Personal ordena a las agencias y corporaciones excluidas la adopción de un reglamento que incorpore el fundamental principio a las normas de personal aplicables a sus empleados no cubiertos por convenios colectivos. No puede quedar fuera de ese Reglamento la prohibición o período de veda electoral a que nos hemos referido porque es recurso óptimo de eficacia del principio de mérito en todas sus áreas esenciales enumeradas en la Sec. 4.1, *supra*, esc. 1. Su vigencia y energía compulsiva en lo que concierne a las agencias y corporaciones excluidas nace de la incorporación de la norma en los respectivos reglamentos. El reglamento bajo el cual el recurrente adquirió *status* de empleado de carrera no contenía la citada prohibición.

Como hemos visto, el principio de mérito no es de rango constitucional, sino estatutario, por lo que hay que aplicarlo en el marco trazado por el legislador, sin la expandida repercusión que imparte prevalencia al precepto constitucional y a su norma, por sobre cualquier conflicto en la legislación que tiene por fin su implantación. La Exposición de Motivos y la Declaración de Política Pública de la Ley de Personal de 1975, enmendada por Ley Núm. 1 de 17 julio, 1979, no pueden leerse, ni entenderse, ni mucho menos aplicarse como si fueran el Preámbulo de la Constitución o parte de la Carta de Derechos.

La inaplicación a la Autoridad de los Puertos de las disposiciones de la Ley de Personal de 1975 es precepto dictado

por el legislador, reiterado en la enmienda de 1979 a la Declaración de Política Pública, acatado por el Director de O.C.A.P. e invocado en instancia por la propia representación legal de la corporación. Nuestra opinión en reconsideración de 20 noviembre, 1979 debió percibir las limitaciones estatutarias del principio de mérito en Puerto Rico y reconocer el preciso mandato legislativo, que provee para situaciones disímiles en la administración de personal de servicio público.

Con estos antecedentes y fundamentos concurro en el resultado a que llega la mayoría revocando la sentencia en reconsideración de 20 noviembre, 1979 y reinstalando la de 31 mayo, 1979 mediante la cual la sentencia recurrida fue confirmada.

—O—

Voto concurrente en parte y disidente en parte del Juez Presidente, Señor Trías Monge.

San Juan, Puerto Rico, a 20 de junio de 1980

Concurro con la conclusión del Tribunal sobre la aplicación del principio de mérito a las agencias excluidas del sistema de Administración de Personal del Estado Libre Asociado. Concurro igualmente con que el período de veda establecido en la Sec. 4.7 de la Ley de Personal del Servicio Público de Puerto Rico, Ley Núm. 5 de 14 de octubre de 1975 (3 L.P.R.A. sec. 1337) aplica a la Autoridad de los Puertos.[1] Ambas determinaciones concuerdan con lo resuelto

---

[1] La Sec. 4.7 dispone:

"A los fines de asegurar la fiel aplicación de mérito en el servicio público durante períodos pre y post eleccionarios, las autoridades deberán abstenerse de efectuar cualquier transacción de personal que envuelva las áreas esenciales al principio de mérito, tales como nombramientos, ascensos, descensos, traslados y cambios de categoría de empleados.

"Esta prohibición comprenderá el período de dos meses antes y dos meses después de la celebración de las Elecciones Generales en Puerto Rico. En el caso de los municipios se entenderá que la prohibición se extiende hasta el segundo lunes del mes de enero siguiente a dichas Elecciones Generales.

por el Tribunal en su opinión de 20 de noviembre de 1979, 109 D.P.R. 229 (1979). Disiento con el mayor respeto de la conclusión que el deber de guardar el período de veda cede ante la obligación de aprobar el reglamento a que se refiere la Sec. 10.6 de la Ley de Personal. (²)

La directriz de que las agencias excluidas formulen, dentro de los ciento veinte días siguientes a la aprobación de la ley, un reglamento que incorpore el principio de mérito, no anula la prohibición de que se efectúen transacciones de personal dentro de los dos meses anteriores y los dos posteriores a la celebración de las elecciones generales. Aun aceptando, cuestión que no está exenta de duda, la afirmación mayoritaria de que la Ley de Personal entró en vigor el 14 de octubre de 1976, ¿qué obliga a resolver que la aprobación de su reglamento por la Autoridad de Puertos dentro del período de veda, cuando no tenía que ser así, le permite a la Autoridad violar el principio de mérito?

Estimo que las Secs. 4.7 y 10.6 de la Ley de Personal son perfectamente armonizables. La Autoridad de los Puertos podía aprobar el reglamento que exige la Sec. 10.6, dentro de los ciento veinte días requeridos, sin infringir la prohibición que impone la Sec. 4.7. La opinión mayoritaria le permite innecesariamente a la Autoridad de los Puertos violar el período de veda correspondiente a las elecciones generales de 1976, aunque no los períodos análogos subsiguientes. Ello

"Se podrá hacer excepción de esta prohibición por necesidades urgentes del servicio, previa la aprobación del Director, conforme a las normas que se establezcan mediante reglamento."

(²) La Sec. 10.6 *in fine* dispone:

". . . . . . . .

"Las agencias o instrumentalidades aquí excluidas . . . deberán adoptar, con el asesoramiento de la Oficina de Personal, y dentro de los próximos 120 días de la aprobación de esta ley, un reglamento de personal incorporando el principio de mérito que regirá las normas de personal de aquellos empleados no cubiertos por convenios colectivos. Copia de los reglamentos así adoptados serán enviados a la Asamblea Legislativa de Puerto Rico."

representa, a mi juicio, una sensible violación del principio de mérito.

La historia del servicio civil en Puerto Rico se destaca por ser una lucha por la eliminación del patronazgo político en los nombramientos a los cargos públicos.(³) La opinión mayoritaria adelanta esta causa al resolver hoy que el principio de mérito se aplica en sus áreas esenciales a las agencias excluidas de la Ley de Personal. La interpretación que se hace sobre la relación entre el período de veda y la aprobación del reglamento no concuerda con la clara intención de la mayoría de defender esa causa a tono con el mandato legislativo.

Por las consideraciones expuestas, denegaría la reconsideración y revocaría la sentencia de que se recurre.

---

(³) Véase: Charles T. Goodsell, *Administration of a Revolution*, Cambridge, Mass., Harvard University Press, 1965, págs. 90–114, y Pedro Muñoz Amato, *Problemas de Derechos Civiles en la Administración de Personal del E.L.A.,* San Juan, P.R., Escuela de Administración Pública, 1961, págs. 55–71.