Alfonso de Cumpiano, Juez Ponente
TEXTO COMPLETO DE LA SENTENCIA
Se nos plantea en este recurso por la Autoridad de Energía Eléctrica (la Autoridad) que erró el *656 Tribunal de Primera Instancia, Sala Superior de San Juan, al decidir que el Sr. Ely Declet Concepción y el Sr. Jorge Correa Martínez fueron despedidos de sus puestos por motivos político-partidistas. Alega que la prueba no sustenta tal determinación, que los remedios ordenados por el tribunal son contrarios a derecho y que medió pasión, prejuicio y parcialidad del tribunal al apreciar la prueba.
Corresponde examinemos la prueba presentada, a la luz del derecho aplicable a la retención de los empleados públicos y a los casos de discrimen político, para la evaluación de la sentencia dictada.
I
No existe controversia en cuanto a los siguientes hechos. El Sr. Ely Declet Concepción comenzó en una plaza unionada de técnico de laboratorio en la Autoridad, el 30 de abril de 1992. En agosto de 1992 fue contratado temporeramente como gerencial, supervisor de enfermería en salud ocupacional. El contrato fue renovado por 168 días adicionales, con término de vencimiento el 31 de julio de 1993. El contrato se dio por terminado por la Autoridad antes de su vencimiento, el 27 de marzo de 1993. El señor Declet se había desempeñado por siete (7) meses bajo contrato.
En cuanto al Sr. Jorge Correa Martínez, éste comenzó en la Autoridad como mensajero en mayo de 1992. En julio de 1992 fue contratado temporeramente como gerencial, supervisor de oficina III, hasta el 16 de enero de 1993. El contrato le fue renovado hasta el 3 de julio de 1993 y posteriormente, hasta el 18 de diciembre de 1993. El contrato se dio por terminado por la Autoridad efectivo el 12 de julio de 1993. Al momento de su terminación, el señor Correa se había desempeñado por once (11) meses y dieciseis (16) días bajo contrato.
Los dos empleados cesanteados eran miembros del Partido Popular Democrático. Sus contratos fueron terminados bajo la nueva administración del Partido Nuevo Progresista.
El trámite procesal que precedió este recurso comenzó cuando ambos empleados demandaron a la Autoridad alegando, en síntesis, que les asistía un derecho propietario sobre su plaza aun siendo transitoria o temporera y que fueron destituidos por motivos político-partidistas, por ser miembros del Partido Popular Democrático. Reclamaron daños y angustias mentales, más los salarios dejados de percibir.
La Autoridad, entre sus defensas, expresó que las terminaciones de los contratos lo fueron por razón de austeridad fiscal y economías.
El tribunal, luego de evaluar la prueba documental y testifical, determinó que los empleados fueron destituidos por motivos político-partidistas. Ordenó el pago al señor Declet de los salarios dejados de percibir desde la terminación del contrato, hasta la fecha de la vista final del caso, con los ajustes correspondientes y daños por $1,500.00. En cuanto al señor Correa, ordenó los salarios dejados de percibir durante la misma etapa, su reposición en una plaza igual o similar y $1,500.00 en sufrimientos y angustias mentales. Posteriormente, enmendó su sentencia mediante resolución, para incluir el pago de la doble penalidad, costas y $2,000.00 en honorarios de abogado dispuestos en la Ley Núm. 100 de 30 de junio de 1959, según enmendada, 29 L.P.R.A. sees. 146 y ss. Respecto a los cómputos de los beneficios, ordenó a la Autoridad efectuar éstos conforme la sentencia, excluyendo los ya pagados y los descuentos que procedieran.
La Autoridad solicita en este recurso la revocación de la totalidad del dictamen.
II
Procedemos, en primer término, a examinar el marco legal que cobija la retención de los empleados en el Estado Libre Asociado y, por ende, en la Autoridad de Energía Eléctrica. Conforme las normas que rigen nuestra función revisora, consideraremos la prueba, a los fines de determinar si cometió error el tribunal al evaluarla y si medió error en la aplicación del derecho.
-A-
A la Autoridad de Energía Eléctrica, corporación pública del Estado Libre Asociado, aunque está excluida de las disposiciones de la Ley de Personal del Servicio Público, Ley Núm. 5 de 14 de octubre de 1975, según enmendada, le son aplicables aquellas referentes a las áreas esenciales dei principio de mérito. 3 L.P.R.A. see. 1331. McCrillis v. Autoridad de las Navieras, 123 D.P.R. 113 (1989); Reyes *657 Coreano v. Director Ejecutivo, 110 D.P.R. 40 (1980). A tenor de lo anterior, está obligada a mantener un sistema de personal que resguarde los derechos de retención de sus empleados, conforme el aludido principio.
De acuerdo a la Ley de Personal del Servicio Público, existen dos categorías básicas de empleados públicos: de carrera y de confianza. 3 L.P.R.A. see. 1349. Los primeros, ingresan mediante un proceso de reclutamiento y selección previo a competir. Luego de un período probatorio, adquieren status de empleados regular o de carrera. El empleado de carrera sólo puede ser destituido por justa causa y previa formulación de cargos. Los segundos, de confianza, son de libre selección y remoción.
La aludida ley también contempla nombramientos de empleados transitorios, en puestos de duración fija. La duración de estos nombramientos corresponderá al período por el cual se cree el puesto. 3 L.P.R.A. see. 1333(12). Durante el terminó de la duración del nombramiento estos empleados tienen una legítima expectativa de retención, más transcurrido éste, sin extensión de nombramiento, no se trata de una destitución, sino de cesantía. Depto. de Recursos Naturales v. Correa, 118 D.P.R. 689, 697.
En el supuesto de que un empleado transitorio sea cesanteado antes de que se venza su nombramiento la jurisprudencia de nuestro Tribunal Supremo ha reconocido que la autoridad nominadora viene obligada a seguir el procedimiento de cesantías establecido en el Reglamento de Personal, see. 9.3. Ese reconocimiento obedece a que el principio de mérito cobija a todos los empleados públicos, y a que la retención en el empleo es una de las áreas esenciales del principio de mérito. Dept. Recursos Naturales v. Correa, supra, pág. 696; Delgado v. D.S.C.A., 114 D.P.R. 177 (1983); Pegasus v. Municipio de Carolina, 112 D.P.R. 822 (1982).
Dada la naturaleza del empleado transitorio, el remedio ante una terminación ilegal del contrato durante el término de su nombramiento es el pago de los haberes dejados de percibir hasta el término del nombramiento, más los daños y perjuicios probados que la terminación ilegal hubiese provocado. Toda vez que se trata de un contrato con término fijo es ese el remedio y no la reinstalación en el empleo. Orta v. Ayala, 131 D.P.R. _ (1992); 92 J.T.S. 96, pág. 9729.
Cónsono con todo lo anterior, los empleados temporeros, transitorios, o de carrera de la Autoridad están protegidos en sus.puestos por las normas que rigen a los servidores públicos. Estos, al igual que todos los empleados públicos gozan de protección constitucional contra el discrimen, aun cuando no puedan basar su reclamo en un interés propietario del puesto. Torres Solano v. PRTC, 127 D.P.R. 499 (1990); Pierson Muller v. Feijóo, 106 D.P.R. 838, 853 (1978): Báez Cancel v. Alcalde, 100 D.P.R. 982 (1972).
En protección de las actuaciones discriminatorias contra los empleados públicos por razones políticas, se han establecido presunciones, entre la que se encuentra la dispuesta en la Ley Núm. 382 de 11 de mayo de 1950, 29 L.P.R.A. see. 137. Bajo ésta, se presume discriminatorio por razón de que el empleado o ex-empleado esté afiliado a determinado partido político, cuando el acto lo haya realizado el patrono sin justa causa o dentro de tres meses antes o seis meses después de haberse celebrado un proceso eleccionario.
No obstante, la mera alegación de discrimen no activa esa fuerte presunción. Se ha resuelto que el demandante viene obligado a establecer la ausencia de motivo racional para el despido y la sustitución por otro empleado de diferente afiliación política a la suya, que sea afín con la afiliación política de la autoridad nominadora. Rodríguez Cruz v. Padilla, 125 D.P.R. 486 (1990).
Una vez se activa la presunción de discrimen, corresponde al demandado el peso de la prueba en contrario. Regla 14 de las Reglas de Evidencia, 32 L.P.R.A. Ap. IV.
A determinados empleados públicos le aplican también las disposiciones de la Ley Núm. 100, supra, que impone responsabilidad civil por una suma igual al doble del importe de los daños que el acto hubiese causado, a todo patrono que despida, suspenda o discrimine contra un empleado suyo, entre otros, por razones políticas. 29 L.P.R.A. see. 146. Aunque el objetivo principal de la ley es proteger a los empleados de la empresa privada, por excepción se extiende a los empleados de *658 instramentalidades de Gobierno que operan como negocio o empresas privadas. 29 L.P.R.A. see. 151 (2). En los debates que precedieron la aprobación de la Ley Núm. 100, se mencionan específicamente como ejemplo de instramentalidades gubernamentales cubiertas por ésta a la Autoridad de Fuentes Fluviales (hoy Autoridad de Energía Eléctrica). Rodríguez Cruz v. Padilla, supra, págs. 508-509.
El derecho expuesto en esta parte nos sirve de guía en la consideración de las determinaciones de hechos y del derecho del tribunal de instancia, la prueba documental que consta en los autos originales, y la prueba testifical sometida mediante su transcripción. Respecto a la prueba documental, es principio reconocido que estamos en igual posición para evaluarla que el tribunal apelado. En cuanto a la prueba testifical, el tribunal apelativo no intervendrá con las determinaciones de hechos, ni con la adjudicación de credibilidad, salvo que haya mediado error, prejuicio o parcialidad. Recientemente, al revocar un dictamen en un caso de discrimen por razón de edad en el que este Tribunal entró a evaluar las determinaciones de hechos del tribunal de instancia y dirimió prueba conflictiva, el Tribunal Supremo rechazó ese proceder. Reiteró la norma fundamental que un tribunal apelativo no intervendrá con las determinaciones de hechos ni con la adjudicación de credibilidad que hizo el juzgador de los hechos, salvo por prejuicio o error manifiesto. Recalcó que lo anterior es particularmente cierto cuando median elementos altamente subjetivos, como lo es la intención del patrono. Reprodujo la norma que "el juzgador de los hechos, que oyó y vio declarar a los testigos, y apreció su demeanor, es quien está indudablemente en la mejor posición para aquilatar la prueba testifical desfilada (cita)." López Vicil v. I.T.T. Intermedia, Inc., _ D.P.R. _ (1997), 97 J.T.S. 42, págs. 833, 838. Ahora bien, las cuestiones de derecho son revisables en toda su extensión.
-B-
De entrada, no encontramos base para la alegación de pasión, prejuicio o parcialidad, argumentada por la apelante a base de que el tribunal acogió para su sentencia el memorando de derecho sometido por la parte que prevaleció en el juicio. Tampoco las manifestaciones inoportunas del juez citadas en nota al calce por la apelante constituyen expresiones de la naturaleza que provocaría la revocación de sus determinaciones. Respecto a lo primero, entendemos que el tribunal acogió lo que a su juicio consideró probado y aplicable al caso. En cuanto a lo segundo, nos percatamos en la lectura de la transcripción de las vistas que hubo extensa discusión e intervención del juez, incluyendo la citada por la apelante, y de los abogados sobre los testimonios y la interpretación de la prueba. Claro está, esas intervenciones no constituyen prueba para sustentar alegaciones. Es sólo a la luz de la prueba presentada que analizaremos las determinaciones de hechos de la sentencia.
La prueba testifical consistió en los testimonios de los dos apelados, del Ing. Miguel A. Cordero, Director Ejecutivo de la Autoridad, el CPA Luis Figueroa Báez, la señora Grace González, la Sra. Lydia Rodríguez, estos tres empleados de la Autoridad, y el Sr. Rufo M. Hernández, presentado como perito en cuestiones de personal. La prueba documental consistió, básicamente, en documentos sobre la situación fiscal de la Autoridad, memorandos de asuntos de personal y documentos de los expedientes de los apelados.
-C-
Comencemos evaluando si la prueba sustenta la determinación de discrimen en la terminación de los nombramientos de los señores Declet y Correa. Al hacer tal determinación, el tribunal adujo correctamente a la presunción legal a favor de los empleados, al haber sido cesanteados dentro del período posteleccionario dispuesto en la Ley Núm. 382, supra. Para que esta presunción opere, no podía mediar justa causa en las cesantías. En este caso, el motivo económico alegado por la Autoridad no fue creído por el tribunal. Ciertamente, los testimonios del Director Ejecutivo, Ing. Miguel A. Cordero y del C.P.A. Luis Figueroa, no son convincentes para dejar establecido que los dos empleados fueron cesanteados previo a la terminación de sus contratos por razones económicas de la Autoridad. Tampoco lo es la prueba documental en tomo al factor económico.
El memorando del Sr. Miguel A. Cordero de 29 de enero de 1993 traído como base para las cesantías, se refiere a paralización de transacciones de personal. Anejos IV y VI del recurso. Su memorando de 11 de marzo de 1993, sobre medidas de austeridad, no alude a terminación de contratos temporeros si no, en lo que aquí respecta, a eliminación de plazas y reclutamiento de personal. Anejo V del recurso. Las plazas de los apelados no fueron eliminadas, según surge de la prueba, sino que continuaron vigentes. Además, el reclutamiento de 700 empleados con posterioridad *659 a las cesantías de los apelados, derrota la contención de motivos económicos. No se brindaron razones económicas a los empleados al momento de cesantearlos. No desfiló prueba sobre otros despidos por razones económicas, ni se estableció un plan de cesantías, como se requiere por ley. Por tanto, entendemos respaldada la determinación de ausencia de razones económicas, por lo que no intervendremos con ella.
La determinación de que medió discrimen político en las cesantías, amerita detenida consideración. Hemos señalado que las cesantías ocurrieron en el período posteleccionario protegido por la Ley Núm. 382, supra, y por tanto existía la presunción de discrimen político a favor de los apelados. Como vimos, ésta no opera automáticamente y depende de las circunstancias del caso y de los criterios que la informan. Están presentes en este caso los siguientes criterios: no se probó la justa causa, puesto que la razón económica no fue creída; los dos empleados pertenecían al Partido Popular Democrático; fueron reclutados estando éste en el poder y cesanteados por la nueva administración del Partido Nuevo Progresista. Aunque según la prueba éstos fueron sustituidos inicialmente por personal de la Autoridad que era de la misma afiliación política que la de los apelados, posteriormente se reclutó externamente a la Sra. Nereida Rodríguez Rodríguez para la posición que ocupó el señor Declet. T.E., Vol. I (vista 11 de diciembre de 1995) pág. 85.
En cuanto a prueba adicional de los apelados sobre el discrimen, el señor Declet testificó que el 18 de febrero de 1993 se reunió con el Sr. Víctor Tirado, jefe interino del Departamento de Recursos Humanos y Personal. Este le informó que no tenía el examen de clasificación general, que no podía seguir trabajando "porque pronto se haría gerencial condicional en el futuro." T.E. Vol. I, pág. 80. Luego le informaron que había sido suspendido de acuerdo a las normas de personal temporero. T.E. Vol. I., pág. 84. También le dijeron para su terminación que sus servicios no eran necesarios. T.E. Vol. I, pág. 86. El contrato se venció y se lo renovó la nueva administración el 14 de marzo y a los pocos días, el 27 de marzo, lo suspendieron. Señaló que no eliminaron la plaza, sino que disfrazaron el título. T.E. Vol. I, pág. 112.
Por su parte, el señor Correa testificó que en el primer mes de su último contrato, le enviaron la carta de cesantía. Le restaban 14 días para cumplir un año por contrato. (T.E. Vol. I, págs. 129-130). Cuestionó las razones y acudió con su cuñada a la oficina del Sr. Manuel Pérez Figueroa, empleado gerencial de la Autoridad y quien era el enlace de la Autoridad con la Fortaleza. Este le dijo que "los puestos que se habían nombrado en los últimos dos años, que todos eran Populares y se necesitaban las plazas para las personas que iban a trabajar después de las primarias que fueron del P.N.P." T.E. Vol. I, págs. 131-132, 135, 155. Expresó que al cuestionársele al señor Pérez Figueroa porqué entendía que él era Popular, si nadie sabía si él lo era, contestó que si fue nombrado (en 1992) entendía que era Popular. T.E. Vol. I, pág. 132. Su plaza la cubrieron con la Sra. Lydia Rodríguez, de la oficina de personal de la Autoridad. T.E. Vol. I, pág. 139. Entendía que como veterano, tenía preferencia sobre alguien de afuera en cualquier lista. T.E. Vol. I, pág. 140. Señaló que "viendo el discrimen político" se dio a la tarea de investigar los nombramientos que estuvieran a la par con sus tareas. Se enteró de lo que le dijeron, que todas las plazas se iban a nombrar con los azules. Se refirió a un listado y mencionó ejemplos. Dijo que él fue Presidente de la Asamblea Municipal de Coamo y manifestó ser afiliado al Partido Popular. (T.E. Vol. I, págs. 141-143).
Ante la presunción a favor de los apelados reafirmada por la prueba presentada mediante sus testimonios, correspondía a la Autoridad presentar prueba convincente de que no medió discrimen político. No lo hizo. Se limitó a presentar motivos económicos, poco convincentes y que no merecieron credibilidad del tribunal.
A tenor de las normas sobre nuestra función revisora, previamente expuestas, y conforme al derecho que rige estos casos, no procede variar la determinación del tribunal a los efectos de que medió discrimen político en las cesantías.
-D-
Nos resta considerar si hay base en la prueba para sustentar la determinación que los apelados tenían una expectativa de continuidad en los puestos temporeros. Esa determinación está estrechamente atada al remedio otorgado por el tribunal apelado al señor Correa de reposición en una plaza igual o similar a la que ocupaba antes de la cesantía y de los salarios otorgados hasta la fecha del *660 proceso judicial. El señor Declet, según la sentencia, no tenía interés en la reposición por haber aprobado la reválida de médico.
La prueba documental claramente sustenta el carácter temporero de los puestos de los apelados. Los pasos subsiguientes a los nombramientos en puestos temporeros gerenciales en la Autoridad para ser empleados regulares, surge de la prueba testifical. El ingeniero Cordero testificó que el empleado temporero tiene un término, que podría ser seis meses, un año; si es gerencial temporero, y pasa más de un año, pasa a gerencial condicionado, basado en unos acuerdos. T.E. Vol. I, pág. 24. Si el empleado pasa a gerencial condicional y está así un año, declaró a preguntas, adquiere permanencia y no se puede despedir igual que a un temporero. T.E. Vol. I, pág. 25. La plaza temporera no necesariamente le toca a la persona que la ocupa temporeramente. T.E. Vol. I, pág. 26. Las plazas que quedan vacantes hay que publicarlas, hay que anunciarlas y todo el personal regular que quiere ascender, tiene prioridad sobre esa plaza. T.E. Vol. I, págs. 26, 43, 47. Contestó que los temporeros provisionales se toman de una lista; son personas que cualifican. T.E. Vol. I, pág. 49. Señaló que a veces es difícil determinar si las personas temporeras hacen falta; cuando caen en regular condicional o especial, los supervisores los mueven; explicó porqué se tarda el sistema en escoger personal de la lista de elegibles. T.E. Vol. I, págs. 54, 56.
El Sr. Ely Declet Concepción explicó en su testimonio sobre las contrataciones mediante fechas fijas, y aunque señaló inicialmente que entendía que después del año tenía nombramiento automático, aceptó que a la terminación de su contrato no había obligación legal (de renovación). T.E. Vol. I, págs. 88, 111.
El Sr. Jorge Correa relató también sobre sus nombramientos por contrato; que su plaza no era regular, sino provisional temporero. T.E. Vol. I, pág. 138. Señaló que la extensión de su nombramiento hasta diciembre de 1993, era un contrato de trabajo (Exhibit 4). T.E. Vol. I, pág. 139. Como veterano, tenía preferencia en registro de elegibles. T.E. Vol. I, págs. 140, 146. Aceptó que su plaza sólo existe durante la duración del contrato. T.E. Vol. I, pág. 152. No había cumplido el año, a la fecha de su terminación; en 14 días "se hubiese iniciado el proceso." T.E. Vol. I, pág. 157. Su plaza temporera estaba presupuestada hasta los próximos cinco meses (después de la terminación). T.E. Vol. I, pág. 173.
La Sra. Grace González, quien pasó a ocupar la posición del señor Declet, pero no cobraba de ésta, testificó que al año y medio se trajo a alguien de afuera, la Sra. Nereida Rodríguez. T.E. Vol. II (vista del 12 de diciembre de 1994), pág. 43. Indicó que cuando quedan personas cesantes (como los apelados) se supone se envíen a un registro, para darle prioridad de surgir vacantes pero en la Autoridad no lo hacen así. T.E. Vol. II, págs. 58-59.
La Sra. Lydia Rodríguez, supervisora de oficina III en Personal en la Autoridad, testificó que cuando la persona cumplía el año como temporero, con un mes de anticipación, se ordenaba que se llenaran los papeles como condicional. Señaló que en el caso del señor Correa, cuando llamaron a la Oficina Central para averiguar de sus papeles, dijeron que no lo iban a nombrar; no le confeccionaron los papeles; no tenía en el expediente ningún documento que lo afectara para nombramiento (condicional); la pasaron a ella al puesto del señor Correa; indicó que ella es del Partido Popular. T.E. Vol. II, págs. 65-68.
El Sr. Rufo Hernández testificó como perito de personal. Explicó que bajo el Reglamento de la Autoridad, un empleado gerencial temporero hace el trabajo de un puesto gerencial por un término fijo de un año; es el equivalente a transitorio. Explicó, además, que el empleado condicional tiene que haber estado un año como temporero, reunir los requisitos del puesto, luego publican el aviso. T.E. Vol. II, págs. 77-82. Expresó su evaluación del sistema de personal de la Autoridad, señalando sus deficiencias. Aceptó que del listado de elegibles, son los supervisores los que escogen al más idóneo que cualifique. T.E. Vol. II, págs. 111-114.
La prueba testifical, brevemente resumida, no apoya la determinación de que había una expectativa de continuidad o de permanencia en los puestos temporeros de los apelados. Tanto los apelados como los otros testigos, consistentemente señalaron que luego del puesto temporero, al cabo del año, se pasaba a condicional y luego al proceso de reclutamiento y selección. Ninguno de los documentos *661 sustenta la posición de expectativa en los puestos. El Exhibit 5A a que alude el tribunal en sus determinaciones de hechos no refleja que el señor Declet ocuparía eii propiedad la posición. Dice sólo que la ocuparía temporeramente, hasta que se seleccione el personal que va a ocuparla. Tampoco surge base en la prueba para determinar que se le había prometido al señor Declet esa plaza en propiedad. En cuanto al señor Correa, no medió prueba alguna de que sus papeles se hubieran procesado, para crear la expectativa de permanencia a que se refiere el tribunal en su sentencia. Más aún, su contrato temporero fue renovado, incluyendo el período posterior al año en que supuestamente pasaría a condicional.
Sus papeles para ser empleado condicional a la fecha de su terminación, no se habían preparado aún cuando faltaban días para el año.
Entendemos que erró el tribunal en su determinación de que bajo el sistema de personal de la Autoridad los apelados tenían expectativa de permanencia. Aun cuando puedan invocarse deficiencias y peculiaridades en el sistema de reclutamiento de la Autoridad, ello no da base para ese dictamen. Los términos de los contratos y el proceso seguido fueron claros. No cabe presumir la expectativa, cuando los apelados fueron nombrados temporeramente en 1992, en período preeleccionario y cuando el proceso de contratación temporera, sin evidencia de promesas o gestiones de reclutamiento regular, culminaría en período posteleccionario. La presunción de discrimen que se activa durante esa etapa, no da margen para sustentar la expectativa de continuidad. Por tanto, no proceden los salarios hasta la fecha del proceso, sino por la duración de los contratos y es improcedente el remedio de la orden de reposición del señor Correa. Cfr. Lupiañez v. Sec. de Instrucción, 105 D.P.R. 696 (1977).
III
Al aplicar el derecho respecto a los remedios disponibles a los apelados, conforme los hechos probados, procede el pago a ambos del sueldo más los beneficios que procedan, con los descuentos legales, desde la cesantía hasta la fecha en que hubiesen vencido sus contratos temporeros, los que tenían términos fijos de duración. Procede también la cuantía adjudicada a cada uno en concepto de daños, sobre lo que medió prueba testifical de parte de ambos apelados. Además, tratándose de una corporación pública que opera como negocio privado, se determinó cesanteo a los apelados por motivos políticos, aplica la doble penalidad dispuesta en la Ley Núm. 100. No proceden los salarios y beneficios dejados de percibir hasta el proceso, ni la orden de reposición del señor Correa.
En virtud de todo lo anterior, se revoca la sentencia según enmendada, en cuanto ordenó el pago de los salarios y beneficios hasta el proceso judicial y la reposición del Sr. Jorge Correa a un puesto en la Autoridad. Se modifica la sentencia para ordenar el pago de los salarios y beneficios, previo los descuentos legales y que no se hubiesen pagado a los apelados, desde la fecha en que se dieron por terminados sus contratos temporeros, hasta la fecha de duración fija de éstos, conforme los cómputos que habrá de efectuar la Autoridad, según dispuesto en la resolución que enmendó la sentencia del tribunal apelado de 17 de octubre de 1996. Se confirman también las cuantías otorgadas a ambos apelados en daños, la doble penalidad de todas las partidas en daños, costas y honorarios de abogados concedidos. El tribunal apelado deberá mantener su disponibilidad expuesta en su resolución, de celebrar vista para considerar la ejecución de esta sentencia y su cumplimiento.
Lo acordó y manda el Tribunal y lo certifica la Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General