**Berenice SUEIRO VÁZQUEZ, et al., Plaintiffs**

v.

**Enid TORREGROSA DE LA ROSA, et al., Defendants.**

**Civil No. 02–2674(JAG).**

United States District Court, D. Puerto Rico.

Feb. 10, 2006.

John F. Nevares, Carlos R. Ramirez, John F. Nevares & Assoc. PSC, San Juan, PR, for Plaintiffs.

Carlos E. Lopez–Lopez, Glorianna S. Hita–Valiente, Marie L. Cortes–Cortes, Zuleika Llovet–Zurinaga, Anabel Franceschini–Rosa, Francisco Rios–Rivera, Llovet Zurinaga & Lopez, PSC, Hato Rey, PR, for Defendants.

## OPINION AND ORDER

GARCIA–GREGORY, District Judge.

Pending before the Court is a Motion for Judgment as a Matter of Law, which defendants Enid Torregrosa de la Rosa, Elizabeth Sola and Veronica Alvarez ("defendants") renewed pursuant to Fed.R.Civ. P. 50(b),[1] after a jury returned a verdict in favor of plaintiffs Berenice Sueiro–Vazquez and Wilfredo Aponte ("plaintiffs") for violations of their First Amendment and Due Process rights.[2] The Court ordered the parties to file simultaneous briefs, with specific citations from the transcripts, on the viability of qualified immunity and injunctive relief. Upon review of the record, the Motion is GRANTED in part and DENIED in part as follows.

## FACTUAL AND PROCEDURAL BACKGROUND

Because the case was tried to a jury, the Court recites the facts in the light most favorable to the verdict. *United States v. Castellini,* 392 F.3d 35, 39 (1st Cir.2004).

The State Historic Preservation Office ("SHPO") was originally created by an Executive Order issued by the Governor of Puerto Rico on July 31st, 1985. The Office was part of the Governor's Office and, as such, its personnel was considered to be within the realm of trust or "confidential" service. On August 21st, 2000, the governor of Puerto Rico signed into law Act No. 183 ("Act No. 183"), which restructured the SHPO into a public agency of the Commonwealth of Puerto Rico. Under Act No. 183, the SHPO consisted of 41 employment positions, of which 37 were career positions, and 4 were trust positions. Prior to the restructuring, the SHPO had 28 trust employee positions, 3 career positions and 10 vacant positions. It is undisputed that Act No. 183 responded to the concerns expressed by the Chief of the Heritage Preservation Services of the United States National Park Services in a letter to the Governor of Puerto Rico. The letter underscored that since 1986, there had been a major management control problem at the SHPO, which the federal officer attributed to the numerous layoffs and the complete turnover of professional staff at that office every time a new governor was elected.

---

1. With the exception of Torregrosa, who is also sued in her official capacity for purposes of injunctive relief, all the defendants are sued in their individual capacities. Torregrosa no longer holds the position of Executive Director of the SHPO. Pursuant to Fed.R.Civ.P. 25(d), the Court substitutes her successor at that post as defendant in his/her official capacity.

2. The jury found for defendants against plaintiffs Astrid Cappas and Delma Rosa. Cappas and Rosa do not challenge the adverse verdict. The judgment entered in this case will so reflect.

On August 31st, 2000, pursuant to Act No. 183, Sueiro was transferred from the position of Assistant Advisor III (Deputy Director) to the career post of Historic Conservation Manager, and Aponte's position of Information Systems Specialist was reclassified as a career position.

In January of 2001, the Hon. Sila M. Calderón, of the Popular Democratic Party ("PDP"), was sworn in as Governor of Puerto Rico. Shortly thereafter, defendant Torregrosa was appointed as Executive Director of the SHPO. On July 30th, 2001, plaintiff Sueiro was advised by defendant Torregrosa that she intended to eliminate the position of Historic Preservation Manager and create a position of Outreach Officer ("Oficial de Enlace"). Sueiro objected to the elimination and proposed appointment to Outreach Officer. However, the position of Historic Preservation Manager was never eliminated and the position of Outreach Officer was never created.

On February 1st, 2002, upon Torregrosa's request for legal advice, the Secretary of Justice issued a memorandum concluding that plaintiff Sueiro's appointment to a career position was illegal under the Public Personnel Act of 1975 ("Personnel Act"). (Docket No. 51, Exhibit # 7). The Secretary of Justice also directed Torregrosa to evaluate all personnel transactions made as a result of the implementation of Act. No. 183, in order to determine their legality. Pursuant to the Secretary's directive, Torregrosa appointed human resources expert Ana Bonet to perform the recommended audit. After going over the transactions in question, Ana Bonet concluded, among other things, that Aponte's appointment was null and void. On February 8th, 2002, defendant Torregrosa wrote a letter to plaintiff Sueiro terminating her from the position of Historic Preservation Manager. On September 16th, 2002, defendant terminated plaintiff Aponte from his position of Information Systems Specialist.

Plaintiffs filed the present Complaint on November 13th, 2002.[3] Defendants filed a Motion for Summary Judgment on February 18th, 2004, which the Court denied because fact issues existed as to whether the plaintiffs' reclassifications to career positions were illegal, and whether the adverse employment actions were substantially motivated by plaintiffs' political affiliation. *See Sueiro Vazquez v. Torregrosa De la Rosa*, 380 F.Supp.2d 63 (D.P.R. 2005). On October 28th, 2005, after 11 days of trial, a jury returned a verdict in favor of plaintiffs Berenice Sueiro–Vazquez and Wilfredo Aponte. The jury found that plaintiffs' First Amendment and Due Process rights were violated when they were terminated from employment because of their political beliefs and without a pre-termination hearing.

As to plaintiff Sueiro, the jury found by a preponderance of the evidence that defendants Enid Torregrosa and Elizabeth Sola knew of Sueiro's political affiliation to the New Progressive Party, that such affiliation was a substantial and motivating factor in the adverse employment decision, and that defendants did not have a legitimate non-discriminatory reason to discharge Sueiro from employment. The jury awarded Sueiro $200,000.00 in compensatory damages for the violation of her First Amendment rights. The jury further found that Sueiro proved her case under Article 1802 of the Puerto Rico Civil Code, and that she was entitled to

---

**3.** The Complaint alleges civil rights violations pursuant to 42 U.S.C. § 1983, and supplemental state law claims. Plaintiffs seek compensatory and punitive damages, as well as injunctive relief in the form of "immediate cessation of [defendants'] unconstitutional and illegal practices and reinstatement to their positions with back pay." (Docket No. 1 at 20)

$100,000.00 in compensatory damages for such violation. The jury also found that Sueiro had a property interest in her employment and thus was entitled to a pre-termination hearing. Since defendants did not grant her said hearing, the jury awarded Sueiro $50,000.00 in compensatory damages.

As to plaintiff Aponte, the jury found by a preponderance of the evidence that defendants Enid Torregrosa, Veronica Alvarez and Elizabeth Sola knew of Aponte's political affiliation to the New Progressive Party, that such affiliation was a substantial and motivating factor in the adverse employment decision, and that defendants did not have a legitimate non-discriminatory reason to discharge him from employment. The jury awarded Aponte $140,000.00 in compensatory damages for the violation of his First Amendment rights. The jury further found that Aponte proved his case under Article 1802 of the Puerto Rico Civil Code, and that he was entitled to $30,000.00 in compensatory damages for such violation. The jury also found that Aponte had a property interest in his employment and thus was entitled to a pre-termination hearing. Inasmuch as defendants did not grant him said hearing, the jury awarded Aponte $20,000.00 in compensatory damages.

Finally, the jury imposed punitive damages upon defendants as follows: 1) Enid Torregrosa: $20,000.00 for her actions against plaintiff Sueiro, and $10,000.00 for her actions against plaintiff Aponte; 2) Elizabeth Sola: $10,000.00 for her actions against plaintiff Sueiro, and $5,000.00 for her actions against plaintiff Aponte; 3) Veronica Alvarez: $5,000.00 for her actions against plaintiff Aponte.

On that same date, defendants requested entry of judgment notwithstanding the verdict pursuant to Fed.R.Civ.P. 50(b). The Court deferred ruling on said motion and ordered the parties to submit simulta-neous briefs on the viability of qualified immunity and injunctive relief. The parties filed their memorandums on December 12th, 2005.

## STANDARD OF REVIEW

### 1. *Rule 50(b) Standard*

■ The standard for setting aside a jury verdict pursuant to Fed.R.Civ.P. 50(b) is a stringent one: the Court must deny the motion for judgment as a matter of law unless the evidence, together with all reasonable inferences in favor of the verdict, could lead a reasonable person to only one conclusion, namely, that the there is a total failure of evidence to prove plaintiff's case. *Vazquez–Valentin v. Santiago–Diaz,* 385 F.3d 23, 29 (1st Cir.2004); *Lama v. Borras,* 16 F.3d 473, 477 (1st Cir.1994). In reviewing the record, the Court will evaluate neither the credibility of the witnesses nor the weight of the evidence. *Vazquez–Valentin,* 385 F.3d at 29; *Santiago–Negron v. Castro–Davila,* 865 F.2d 431, 445 (1st Cir.1989).

## DISCUSSION

Upon due consideration of the testimonial and documentary evidence presented at trial, the parties post-trial memoranda, and making all reasonable inferences in favor of the verdict, the Court finds that the jury verdict is supported by the evidence, and hence DENIES the Rule 50(b) Motion, to the extent that the jury verdict must stand. Nonetheless, the Court will address two outstanding legal issues that fall outside the purview of the verdict rendered, to wit: whether qualified immunity is viable, and whether plaintiffs are entitled to the injunctive relief requested.

### A. Qualified Immunity

The Court must begin by pointing out that defendants did not raise qualified im-

munity in their Motion for Summary Judgment, and only raised it alternatively at trial through a Rule 50(a) motion.[4] The Court chose to submit the case to the jury and deal with that issue after the jury verdict, if necessary. The defendants renewed the qualified immunity defense through their Rule 50(b) motion. The Court acknowledges that qualified immunity is a question of law for the Court to decide, and sees no obstacle in entertaining it at this stage. *See Wilson v. City of Boston,* 421 F.3d 45, 53 (1st Cir.2005)(holding that "the qualified immunity defense is not waived or lost if a case proceeds to trial"); *Hilaire v. City of Laconia,* 71 F.3d 20, 24 (1st Cir.1995)("the ultimate question of qualified immunity should ordinarily be decided by the court").

 Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The First Circuit employs a three-prong test when determining if a public official is entitled to qualified immunity: "(1) whether plaintiff's allegations, if true, establish a constitutional violation; (2) whether that right was clearly established at the time of the alleged violation; and (3) whether a similarly situated reasonable official would have understood that the challenged action violated the constitutional right at issue." *Mihos v. Swift,* 358 F.3d 91, 102 (1st Cir.2004)(citing *Suboh v. District Attorney's Office of Suffolk Dist.,* 298 F.3d 81, 90 (1st Cir.2002); *Harlow,* 457 U.S. at 818–819, 102 S.Ct. 2727);

*Vives v. Fajardo,* 399 F.Supp.2d 50, 55 (D.P.R.2005).

In *Saucier v. Katz,* 533 U.S. 194, 200, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), the Supreme Court explained that the pure constitutional question (first prong) "must be the initial inquiry," and courts may not simply "skip ahead to the question whether the law clearly established that the officer's conduct was unlawful in the circumstances of the case." *Saucier* explained that courts must address the constitutional merits question first in order to facilitate the development of the law. *See also Gonzalez–Alvarez v. Rivera Cubano,* 426 F.3d 422, 430 (1st Cir.2005). Consequently, the Court must begin by discussing whether defendants violated Sueiro and Aponte's constitutional rights by terminating them from employment in the circumstances outlined above.

### 1. *The Constitutional Violation Requirement*

An unanimous jury found by a preponderance of the evidence that defendants violated plaintiffs' First Amendment and Due Process rights by discharging them because of their political affiliation, and without affording them a pre-termination hearing. Defendants, however, do not challenge that conclusion. Throughout the proceedings, they have only asserted that plaintiffs were illegally reclassified as career employees, inasmuch as "Law No. 183 did not grant any right, and the only way they could have lawfully been appointed into a career position was showing compliance with 3 P.R. Laws Ann. § 1351(7)." Therefore, defendants argue that, notwithstanding the verdict, plaintiffs' discharges did not constitute a constitutional violation because: 1) employees in career positions

---

4. Defendants' Rule 50(a) motion was mainly grounded on their *Mt. Healthy* defense: that regardless of Sueiro and Aponte's political affiliation, there was a legitimate non-discrim-

inatory reason to terminate them, to wit, the Secretary of Justice's conclusion that their appointments were illegal. Alternatively, defendants raised qualified immunity.

that were illegally hired are "neither invested nor entitled to the due process protections which inure to their legally hired counterparts," *Correa–Martinez*, 903 F.2d at 54 *(citing Rosario–Torres v. Hernandez–Colon*, 889 F.2d 314, at 319 (1st Cir. 1989); and 2) plaintiffs were really holding trust positions, which are not ones for which political affiliation is an improper motive, *Rutan v. Republican Party of Illinois*, 497 U.S. 62, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990); *Flynn v. City of Boston*, 140 F.3d 42, 44–45 (1st Cir.1998)(holding that "first amendment right against political discrimination . . . does not extend to positions which potentially involve decision making on issues where there is room for political disagreement on goals or their implementation," or where the jobholder is a policymaker, confidential assistant, spokesman, or similar officeholder). The Court disagrees.

■ After review of the record, the Court rules that defendants failed to show the nullifying flaw in plaintiffs' reclassifications to career status. *See Rosario–Urdaz v. Velazco*, 433 F.3d 174, 180 (1st Cir.2006) ("the burden is on the [defendant] to show the nullifying flaw"). Specifically, the Court finds that defendants rely too much on the fact that plaintiffs' reclassifications do not satisfy several of § 1351(7)'s requirements. However, defendants do not elaborate on how that section's requirements for the reclassification of status are to be reconciled with Act No. 183's specific purpose of restructuring the SHPO, and giving permanent status to its employees to avoid staff turnover every time a new administration acceded into power.

That analysis, as we noted in our Opinion and Order of August 5th, 2005, *Sueiro Vazquez v. Torregrosa De la Rosa*, 380 F.Supp.2d 63 (D.P.R.2005), was performed

by the Puerto Rico Supreme Court in *Reyes Coreano v. Loubriel*, 110 D.P.R. 40, 1980 WL 138524 (1980). In that case, the Puerto Rico Supreme Court upheld a personnel transaction that was in conflict with both the electoral moratorium and the Personnel Act's requisites for reclassification, because said transaction was performed pursuant to a clear legislative mandate. Specifically, the Puerto Rico Supreme Court noted that the transaction in question was made in accordance with the agency's new personnel regulations, enacted pursuant to legislation that directed the Puerto Rico Ports Authority to reclassify a substantial number of confidential public employees to career status. *Id.*, at 55, 1980 WL 138524. There, the defendants presented arguments similar to those of defendants in the case at bar, namely, that the regulations implemented by the Puerto Rico Ports Authority, which gave Mr. Reyes–Coreano a career position, were illegal because they violated several dispositions of the Personnel Act. The Puerto Rico Supreme Court, however, reconciled the legislative incongruence by deciding that the Personnel Act's general requirements for reclassification to career status were to be applied prospectively to new personnel, but that the more specific and immediate legislative mandate was to be implemented in favor of the employees who were holding positions within the agency upon approval of the new law.

As *Reyes Coreano*, the present case does not fit within the typical section 1351(7) analysis, which usually deals with a reclassification performed by independent administrative action. Instead, both cases deal with a reclassification plan that was performed pursuant to a legislative mandate, but which is somehow in conflict with the Personnel Act.[5] Nonetheless, defen-

---

**5.** Defendants consistently argued that certain aspects of Act. No. 183 are in conflict with the Personnel Act. However, defendant Torregro-

sa admitted that she never challenged the Act in federal or state court. (Docket No. 145 at 5).

dants simply chose not to address *Reyes Coreano* in their post-trial memoranda on qualified immunity, even though the case was brought by plaintiffs at the dispositive motion stage, and noted by the Court in its prior Opinion and Order. Therefore, the Court sees no reason to depart from *Reyes Coreano's* reasoning.

Alternatively, defendants tried to establish that plaintiffs' reclassifications were ineffectual because plaintiffs continued to perform policy oriented functions inherent to the trust service. However, defendants did not furnish a job description of plaintiffs' new positions to support their contentions, and opted instead to prove their argument through testimonial evidence, primarily that of Ana Bonet.[6] Plaintiffs, nonetheless, provided testimony that conflicted with defendants' assertions regarding the nature of plaintiffs' positions and the functions they actually performed. Hence, defendants do not place the Court in a position to objectively ascertain which functions were assigned to plaintiffs' positions, and leave the Court no alternative but to assess the credibility of each side's witnesses in conjunction with the pertinent supporting documents. *Cf. Olmeda v. Ortiz–Quinonez,* 434 F.3d 62 (1st Cir.

2006)(where the Court was supplied with plaintiff's job description, and engaged in an objective analysis to determine whether her functions were those of a career employee). After assessing the conflicting testimonial evidence, and in light of the clearly stated purpose of Act No. 183,[7] the Court rules that defendants' theory that plaintiffs' functions were not inherent to the career service was never firmly established.

For the foregoing reasons, the Court finds that defendants did not prove that plaintiffs' reclassifications were illegal, and thus rules that plaintiffs were career employees at the time of dismissal, who could only be removed from their positions for just cause after due filing of charges. 21 P.R. Laws Ann. § 4554(b); *Cleveland Board of Ed. v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985); *Whalen v. Massachusetts Trial Court,* 397 F.3d 19, 24 (1st Cir.2005). In light of the jury verdict that defendants were terminated from employment because of their political beliefs and without a pre-termination hearing, the Court finds that defendants violated plaintiffs' constitutional rights.

**6.** The only job description in the record is that for the position of Assistant Advisor II, which plaintiff Suiero held before being appointed as Historic Preservation Manager. (Docket No. 67, Exhibit # 1).

**7.** See *Torres Rivera v. Calderon Serra,* 412 F.3d 205, 211 (1st Cir.2005)("[a]s to intent, here the legislature explicitly stated its intent behind Law 94: it found the expanded Commission system under Law 63 did not function effectively, leading to delays and complaints from the citizenry. We will not look behind that express statement as to a law neutral on its face").

In the case at bar, Act No. 183's Statement of Purpose states, in pertinent part, that

.　　.　　.　　.　　.

During recent years, the work of the Commonwealth Historical Preservation Office has

been impacted by the loss of its human resources because its staff is not permanent. This practice has resulted in the loss of considerable amounts of money, documents and time necessary to train the new work force of the Office, which—in turn—delays any progress that is achieved by the historic preservation program. The federal government requires that the entity that is in charge of issuing opinions on infrastructure projects that use federal funding allocations must perform its work in an uninterrupted manner thus ensuring the objectivity and efficacy of the parameters established by the United States Department of the Interior. (Docket No. 62, Exhibit # 9).

2. *The "Clearly Established Right" and "Reasonableness" Requirements* [8]

█ It is beyond debate that, as a general matter, the constitutional rights to due process and to be free from political discrimination were clearly established at the time of plaintiffs' dismissals. However, the inquiry into whether a right is clearly established "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Whalen* 397 F.3d at 27; *Mihos v. Swift,* 358 F.3d 91, 102 (1st Cir.2004). Hence, the Court must delve into whether plaintiffs' property rights as career employees at the SHPO were clearly established at the time of dismissal.

Defendants argue that the legal analysis as to this prong "is twofold" because the Court must go beyond deciding whether Act. No 183 vested any property rights upon plaintiffs, and shall also consider how the strictures of the Personnel Act influenced the defendants' decision. (Docket No. 146 at 27). Defendants point to the fact that, even conceding that Act No. 183 did grant plaintiffs a property right, that same law prescribed that the SHPO shall determine their [the personnel's] qualifications, requirements, duties and tasks in accordance with the provisions of Law 5[Puerto Rico Personnel Act], supra. 3 P.R. Laws. Ann. § 1111. In other words, defendants argue that, at the time of dismissal, it was unclear how the conflicting mandates of Act No. 183 were to be reconciled.

The plaintiffs counter that defendant Torregrosa's testimony during trial suggests that she was aware that Act No. 183 "had as its purpose changing all employees from trust to career status because of concerns by the Department of Interior and the National Park Service of the United States of America," and thus "cannot shield herself behind the clearly established requirement of the qualified immunity defense." (Docket No. 145 at 5–6). Plaintiffs further argue that the *Reyes Coreano* case is squarely on point, and thus defendants cannot allege that, at the time of dismissal, there was no caselaw dealing with similar issues. *Id.,* at 9.

As the discussion in the preceding section illustrates, the Court ultimately agrees with plaintiff's legal theory. However, that same discussion portrays the complexity of the legal issues here at issue. Notwithstanding the soundness of plaintiffs' arguments, the Court must not lose sight of the fact that none of the defendants is a lawyer, and that the course of action they chose to follow in light of their confusion was not unreasonable: ask the Secretary of Justice for an opinion. (Docket No. 51, Exhibit # 6). Upon the request for legal advice, the Secretary of Justice concluded that Sueiro's appointment to a career position was null and, accordingly, Torregrosa terminated her from employment.[9] The Secretary's Opinion also instructed Torregrosa to evaluate all personnel transactions made as a result of the implementation of Act. No. 183, and pursuant to that instruction, Torregrosa appointed human resources expert Ana

---

8. The Court notes that the First Circuit has sometimes combined the second and third prongs of the qualified immunity analysis into a single step. *See Whalen,* 397 F.3d at 27; *Riverdale Mills Corp. v. Pimpare,* 392 F.3d 55, 60 n. 5. (1st Cir.2004).

9. The Secretary of Justice, however, reached this conclusion by assuming that Sueiro continued performing the duties of Assistant Advisor III (Deputy Director), notwithstanding her new position of Historic Preservation Manager. (Docket No. 51, Exhibit # 7). Sueiro denies this, and points to the fact that after her classification to Preservation Manager, the position of Assistant Advisor III was left vacant.

Bonet, who concluded that Aponte's appointment was null. Torregrosa then consulted an external legal advisor, who agreed with the Secretary of Justice's opinion. Consequently, Torregrosa terminated Aponte on September 16th, 2002.

Plaintiffs counter that Torregrosa's referral to the Secretary of Justice was a hoax, which only sought an official imprimatur to her decidedly discriminatory intentions.[10] But, even assuming this is the case, once the Secretary of Justice rendered her opinion, Torregrosa had no reason to doubt the correctness of its contents. In fact, as a member of the executive branch, she was required to act in accordance with the Secretary's Opinion. *See Colegio de Ingenieros y Agrimensores v. Autoridad de Acueductos y Alcantarillados de Puerto Rico,* 131 D.P.R. 735, 775 (1992)("the Secretary of Justice's opinions bind those administrative agencies that seek his/her advice")(translation ours). In sum, the facts at hand do not support a finding that Torregrosa was "objectively unreasonable." *See e.g. Carrasquillo v. Aponte Roque,* 682 F.Supp. 137, 140 (D.P.R.1988)(holding that officials of the Puerto Rico Department of Education were entitled to qualified immunity from civil rights claims arising from dismissal of school managers, in light of unequivocal opinion of the Secretary of Justice that position of school managers was null and void under the Puerto Rico personnel statutes and standards).

█ Therefore, whether or not the Court deems plaintiffs' rights to be clearly established in the specific context of this case, the outcome of the immunity inquiry would still be the same because defendants inexorably meet the third requirement for qualified immunity to apply, that is, objectively reasonable conduct by defendant officers resulting in plaintiffs' termination of employment. Defendants are therefore entitled to qualified immunity.

**B. Injunctive Relief**

█ Plaintiffs argue that regardless of qualified immunity, they are entitled to injunctive relief, in the form of reinstatement to their former positions at the SHPO and back pay. (Docket No. 1 at 20; Docket No. 145 at 10). Defendants, relying on *Colon–Rivera v. Puerto Rico Department of Social Services,* 736 F.2d 804, 806 (1st Cir.1984) and *Fernandez v. Chardon,* 681 F.2d 42, 59 (1st Cir.1982), argue that back pay is a retroactive award, and consequently payment thereof from the Commonwealth of Puerto Rico's coffers may not be sought in a federal forum. The Court agrees: pursuant to *Ex parte Young,* "relief that is tantamount to an award of damages for a past violation of federal law, even though styled as something else, is barred" by the Eleven Amendment. *Papasan v. Allain,* 478 U.S. 265, 278, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986); *Whalen,* 397 F.3d at 29. Thus, back pay is foreclosed in this case by the combined force of the Eleventh Amendment and qualified immunity. While the Eleventh Amendment bars monetary awards against the Executive Director of SHPO in her official capacity, the individual defendants are likewise protected from money damages by qualified immunity.

█ Reinstatement, however, is a different story. The First Circuit has held that reinstatement is available to a government employee who has been terminated in vio-

---

**10.** *Cf. Vazquez v. Aponte–Roque,* 678 F.Supp. 37, 40 n. 7 (D.P.R.1988)("we do not discuss the legality or the convincing force of the opinions by the Secretary of Justice. This would be immaterial to the purposes of this analysis. Plaintiffs insinuate that a conspiracy between the Department of Justice and the Secretary of Education existed to do away with the positions. In this case the evidence does not justify such conclusion").

lation of his/her constitutional rights. *Rosario–Torres v. Hernandez–Colon,* 889 F.2d 314, 320 (1st Cir.1989); *Hiraldo–Cancel v. Aponte,* 925 F.2d 10 (1st Cir.1991). Moreover, the Court has also established that qualified immunity is immaterial to injunctive relief. *Hegarty v. Somerset County,* 25 F.3d 17 n. 2 (1st Cir.1994).

■ In the case at bar, a jury found by a preponderance of the evidence that defendants violated plaintiffs' constitutional rights by discharging them because of their political affiliation, and without affording them a pre-termination hearing. Also, the Court independently found in its qualified immunity analysis that defendants did not prove that plaintiffs were illegally appointed to career positions at the SHPO. Furthermore, defendants have failed to introduce evidence indicating that plaintiffs' reinstatement is impracticable. Therefore, the Court rules that the immediate reinstatement of plaintiffs Berenice Suiero and Wilfredo Aponte is in order.

## CONCLUSION

For the reasons stated above, the Court rules that: 1) the jury verdict is supported by the evidence admitted during trial, and hence the Rule 50(b) Motion is **DENIED** to this extent; 2) defendants have failed to show to the Court's satisfaction that plaintiffs' appointments to career positions were null and void; 3) notwithstanding the jury verdict and the Court's independent finding of constitutional violations, defendants did not act unreasonably when they relied upon an opinion by the Secretary of Justice to terminate plaintiffs from employment, and thus their request of qualified immunity is **GRANTED.** Accordingly, all monetary awards granted by the jury are hereby **VACATED.**

Since plaintiffs had a property interest in their employment, and were denied due process when they were dismissed without just cause and a pre-termination hearing, the Court hereby **ORDERS** the Executive Director of the SHPO to immediately reinstate Berenice Suiero and Wilfredo Aponte to their former positions at the SHPO. Judgment shall enter accordingly.

IT IS SO ORDERED.