# United States Court of Appeals

## For the First Circuit

No. 06-1499

BERENICE R. SUEIRO VÁZQUEZ; WILFREDO APONTE PAGÁN,

Plaintiffs, Appellants,

ASTRID A. CAPPAS PÉREZ; DELMA ROSA COLÓN RODRÍGUEZ,

Plaintiffs,

v.

ENID TORREGROSA DE LA ROSA, in her personal and official capacity
as Executive Director of the State Historic Preservation Office;
ELIZABETH SOLA; VERÓNICA ÁLVAREZ; JOHN DOE; RICHARD ROE,

Defendants, Appellees,

FRANCISCO CÁTALA,

Defendant.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO
[Hon. Jay A. Garcia-Gregory, U.S. District Judge]

---

Before

Lynch, Lipez, and Howard,
Circuit Judges.

---

John F. Neváres, with whom Carlos R. Ramírez and John F.
Neváres & Associates, P.S.C. were on brief, for appellants.
Leticia Casalduc-Rabell, Assistant Solicitor General, with
whom Salvador J. Antonetti-Stutts, Solicitor General, Mariana
Negrón-Vargas, Deputy Solicitor General, and Maite D. Oronoz-
Rodríguez, Deputy Solicitor General, were on brief, for appellees.

---

July 19, 2007

---

**LYNCH**, **Circuit Judge**.  A jury found that a new Popular Democratic Party ("PDP") administration in Puerto Rico had violated the First Amendment political affiliation and Fourteenth Amendment due process rights of New Progressive Party ("NPP") members Berenice Sueiro Vázquez and Wilfredo Aponte Pagán when they were fired from their positions as employees in Puerto Rico's State Historic Preservation Office ("SHPO").  The jury also found that the firings violated Article 1802 of the Puerto Rico Civil Code.  See P.R. Laws Ann. tit. 31, § 5141.  The jury awarded substantial compensatory and punitive damages: $380,000 in total for Sueiro, and $210,000 in total for Aponte.

After return of the jury verdict, the district court found that the defendant public officials were entitled to qualified immunity, and vacated the damages award.  Sueiro Vázquez v. Torregrosa de la Rosa, 414 F. Supp. 2d 124, 134 (D.P.R. 2006).  The court also ordered the SHPO to reinstate Sueiro and Aponte to their former jobs, holding that the defendants had failed to show that the plaintiffs' appointments to their positions were null and void under Puerto Rico law.  Id.  The plaintiffs appeal the immunity order which defeated their damages claims; the defendants purport to appeal the reinstatement order.

On plaintiffs' appeal, we affirm the grant of immunity.  The defendants acted, as they were required to do by law, on the advice of the Secretary of Justice that Sueiro's employment was

-2-

null and void under Puerto Rico law, and on the Secretary's instruction to evaluate the legality of other personnel transactions. On defendants' purported appeal, we hold that the mere submission of a check for a filing fee to the district court clerk, without a notice of appeal or any other filing (electronic or hard copy), is insufficient to notice an appeal under Fed. R. App. P. 3.

A general description of the case suffices for both issues.

## I. BACKGROUND

Plaintiffs Sueiro and Aponte were employees of the SHPO. On September 1, 2000, pursuant to Puerto Rico Act No. 183,[1] Sueiro was transferred from a trust position as Assistant Advisor III to a career position as Historic Conservation Manager. On or about the same date, Aponte's position as Information Systems Specialist was reclassified from a trust position to a career position.

---

[1] The Governor of Puerto Rico signed Act No. 183 into law on August 21, 2000. The Act created the SHPO, which was a successor to the "Commonwealth Office for Historic Preservation." P.R. Laws Ann. tit. 3, § 1115(a). The predecessor office was created by executive order in 1985. Id. Act No. 183 classified the SHPO as an "Individual Administrator" pursuant to the Puerto Rico Public Service Personnel Act. Id. § 1111. The act also provided that all personnel working at the predecessor office would be transferred to the SHPO. Id. § 1115(b). It is undisputed that Act No. 183 sought to avoid the complete turnover of professional staff in the preservation office every time a new governor was elected.

Sueiro was terminated from her career position on February 8, 2002; Aponte's employment was terminated on September 17, 2002.

Sueiro and Aponte sued, alleging violations of their political affiliation and due process rights under the First and Fourteenth Amendments of the Constitution and Sections 1, 6, and 7 of Article II of the Puerto Rico Constitution. They also brought a tort action under Article 1802 of the Puerto Rico Civil Code. After eleven days of trial, the jury found in plaintiffs' favor. In its verdict forms, the jury rejected defendants' claims that they had not discriminated, as well as defendants' defense under Mt. Healthy City School District Board of Education v. Doyle, 429 U.S. 274, 287 (1977).

The defendants had raised the defense of qualified immunity for the first time at trial. The district court had reserved the issue until after the return of a verdict, Sueiro Vázquez, 414 F. Supp. 2d at 128-29 & n.4, and ultimately found that the defendants were entitled to qualified immunity, id. at 133. On the first question of whether a constitutional right had been violated, the court found that the jury verdict was supported by evidence that the defendants had violated plaintiffs' constitutional rights. Id. at 131. The court largely bypassed the next question of whether such rights were clearly established. Id. at 132-33. The court held, on the final prong, that qualified immunity must be granted because the defendants reasonably had

asked the Secretary of Justice for an opinion regarding the legality of personnel transfers within the SHPO, and then reasonably relied on that opinion.  Id.

The Secretary's February 1, 2002 opinion stated that Sueiro's appointment to a career position was "null" because the prior administration's actions had violated P.R. Laws Ann. tit. 3, § 1351(7) (2000 & Supp. 2004).  The opinion also directed the SHPO to evaluate all personnel transfers from trust positions to career positions as a result of Act No. 183, to ensure that such transfers were made in accordance with section 1351.  As a result of the review ordered by the Secretary of Justice, Aponte's reclassification into a career position likewise was found to be null.  Citing a Puerto Rico Supreme Court case, the district court stated that the Secretary's opinion was binding on defendants, whether or not the opinion was correct.  Sueiro Vázquez, 414 F. Supp. 2d at 133.  The court held that the defendants acted in an objectively reasonable manner by relying on the Secretary's opinion in terminating Sueiro and Aponte.  Id. at 132-33.

On the question of injunctive relief, the district court held that there was sufficient evidence to support the jury's finding that the plaintiffs had a property interest in their employment, and so the court ordered reinstatement of Sueiro and Aponte to their former positions.  Id. at 134.

Defendants moved for reconsideration of the reinstatement order. The district court denied the motion and entered the order denying reconsideration on March 28, 2006. This started the running of the 30-day appeal period. See Fed. R. App. P. 4(a)(1)(A); see also 28 U.S.C. § 2107(a).

## II. NOTICE OF APPEAL

A. <u>Absence of a Notice of Cross-Appeal from Defendants</u>

On March 31, 2006, the plaintiffs timely appealed from the grant of qualified immunity and the vacatur of the damages awards. The plaintiffs' appeal was docketed in our court as No. 06-1499, and a briefing schedule issued.

The defendants did not file a notice of cross-appeal. However, on April 20, 2006 -- that is, within the 30-day appeal period -- they paid an appellate filing fee by check to the district court. The defendants at the time were represented by an outside attorney, Francisco Rios Rivera. The payment is reflected on the district court docket in this case as:

> Appeal Fee Received $ 455.00, receipt number
> 162387 Fr: Francisco Rios Rivera (fg, )
> (Entered: 04/20/2006)

On August 23, 2006, the defendants, now represented by the Solicitor General of Puerto Rico, filed a motion in this court stating that they had only recently realized that attorney Rios

Rivera had purported to file a cross-appeal.[2] The defendants asked this court to stay the briefing schedule to permit them to pursue a motion in the district court seeking leave to "correct the erroneous filing" of the notice of appeal. They represented that prior counsel had assured them that he had electronically filed the notice of appeal. They argued, based on that representation, (1) that the district court must have committed error in not docketing a notice of appeal, and (2) that the April 20 payment of the filing fee unambiguously demonstrated (a) their intent to appeal the reinstatement order, and (b) their belief that their electronic filing had been effective. They did not, however, file a copy of the purported notice of appeal as received by the district court.[3] Indeed, the defendants admitted that they could not be certain, despite prior counsel's statement, that their notice of appeal was ever filed. Their basic argument was that the notice must have disappeared into the ether of electronic filing.

On August 22, 2006, the defendants had also filed a motion in the district court requesting leave to "refile" their notice of appeal. They proffered a copy of their purported notice

---

[2]  The defendants explained that the change in legal counsel was necessary in light of the fiscal crisis faced by Puerto Rico in April, May, and June of 2006. Due to this crisis, a number of cases were handed over to the Department of Justice, causing a significant increase in work for the Solicitor General's office.

[3]  The defendants did submit a document entitled "Notice of Appeal" dated April 19, 2006, but there was nothing to suggest that the document had in fact been received by the district court.

-7-

of appeal. The certificate of service for the notice stated that the document was electronically filed on April 19. But the defendants offered no proof that the notice of appeal had ever actually been filed with the district court. The defendants also proffered an image of the check for the filing fee that was docketed as received by the district court on April 20. That check carried the notation "Notice of Appeal re: Berenice Sueiro." As they later did before this court, the defendants argued that the fee payment evidenced both their intent to file a notice of appeal as well as their belief that their electronic filing had been effective. The plaintiffs opposed the defendants' request, arguing that (1) the defendants could not prove that they had in fact filed a notice of appeal, (2) the payment of the appellate filing fee did not provide the notice that Fed. R. App. P. 3(c)(1) requires, and (3) to the extent that the defendants were seeking an enlargement of time to file a notice of appeal, they did not, and could not, establish excusable neglect or good cause.

On August 25, 2006, the district court concluded that since the defendants could not furnish material evidence to show that they had in fact filed the notice of cross-appeal, and since the docket did not reflect such a filing, no notice of appeal had been filed. It rejected the argument that the electronic case filing system had somehow eaten the notice. The court then construed defendants' motion as one for an extension of time to

file a notice of appeal under Fed. R. App. P. 4(a)(5)(A). The district court concluded that defendants had failed to demonstrate "excusable neglect or good cause," as required by Rule 4(a)(5)(A), because a change in legal representation and a suddenly busier practice are fairly commonplace, and attorneys must be prepared to deal with the difficulties that attach to both sets of circumstances.[4]

## B. Federal Rule of Appellate Procedure 3(c)

In its August 23 motion to this court, defendants asked that they be allowed to challenge the reinstatement order "as part of the current appeal." That request has no merit. "A party who neglects to file a cross-appeal may not use his opponent's appeal as a vehicle for attacking a final judgment in an effort to diminish the appealing party's rights thereunder." Figueroa v. Rivera, 147 F.3d 77, 81 (1st Cir. 1998). This is exactly what the defendants seek to do here. The prohibition on this kind of attack is "'inveterate and certain.'" El Paso Natural Gas Co. v.

---

[4] The defendants moved for reconsideration, arguing that the timely payment of the filing fee constituted material evidence establishing that they had "engaged in the filing" of the notice of appeal and believed that they had done so successfully, and that it was at least as likely that the lack of reflection of this filing on the docket was a failure of the electronic system itself, rather than a failure of counsel.

The district court summarily denied the defendants' motion for reconsideration. The defendants have not appealed this ruling. The defendants' failure to appeal the district court's denial of their request to "refile" the notice of appeal precludes them from arguing that the district court erred or abused its discretion in so ruling.

<u>Neztsosie</u>, 526 U.S. 473, 479 (1999) (quoting <u>Morley Constr. Co.</u> v. <u>Md. Cas. Co.</u>, 300 U.S. 185, 191 (1937)). The cross-appeal requirement "is not there to penalize parties who fail to assert their rights, but is meant to protect institutional interests in the orderly functioning of the judicial system, by putting opposing parties and appellate courts on notice of the issues to be litigated and encouraging repose of those that are not." <u>Id.</u> at 481-82.

We turn to the legal question of whether the recorded payment of the appellate filing fee suffices to notice an appeal. Fed. R. App. P. 3(c) is entitled "Contents of the Notice of Appeal" and identifies the requisite elements of a notice of appeal:

> (1) The notice of appeal must:
>
> (A) specify the party or parties taking the appeal by naming each one in the caption or body of the notice, but an attorney representing more than one party may describe those parties with such terms as "all plaintiffs," "the defendants," "the plaintiffs A, B, et al.," or "all defendants except X";
>
> (B) designate the judgment, order, or part thereof being appealed; and
>
> (C) name the court to which the appeal is taken.

The Rule further states that "[a]n appeal must not be dismissed for informality of form or title of the notice of appeal, or for failure to name a party whose intent to appeal is otherwise clear from the notice." Fed. R. App. P. 3(c)(4).

-10-

The filing of a notice of appeal is a jurisdictional requirement. See Bowles v. Russell, 127 S. Ct. 2360, 2366 (2007); see also Becker v. Montgomery, 532 U.S. 757, 765 (2001). The requirements of Rule 3 are liberally construed,[5] and we may find that a litigant "has complied with the rule if the litigant's action is the functional equivalent of what the rule requires." Smith v. Barry, 502 U.S. 244, 248 (1992) (quoting Torres v. Oakland Scavenger Co., 487 U.S. 312, 316-17 (1988)) (internal quotation marks omitted). Smith held:

> While a notice of appeal must specifically indicate the litigant's intent to seek appellate review, the purpose of this requirement is to ensure that the filing provides sufficient notice to other parties and the courts. Thus, the notice afforded by a document, not the litigant's motivation in filing it, determines the document's sufficiency as a notice of appeal.

Id. at 248 (emphases added) (citations omitted).

The defendants' mere payment of the appellate filing fee fails to meet this test. The check itself was not a filing in the record, and so could not give sufficient notice of appeal. Checks are not kept in the clerk's office -- they are presented for payment. The docket entry memorializing the payment of the fee is not itself a "filing" or "document." The defendants have offered

---

[5]     Other parts of the Federal Rules of Appellate Procedure pertinent to the filing of a notice of appeal require strict adherence. See Bowles, 127 S. Ct. at 2366 (rejecting a "unique circumstances" exception to requirement that notice of appeal be timely filed).

no evidence that there was any such filing or document attached to the payment. Indeed, this court has inquired of the district court whether a cover letter accompanied the check. A search was conducted, and nothing was found. Moreover, the defendants concede that the PACER electronic filing system did not reflect the filing of any notice of appeal.

None of the cases relied on by the defendants is on point.[6] Courts have found _filings_ (rather than the mere payment of an appellate filing fee) to constitute the functional equivalent of a notice of appeal. See, e.g., Intel Corp. v. Terabyte Int'l, Inc., 6 F.3d 614, 617-18 (9th Cir. 1993) (opening appellate brief); McLemore v. Landry, 898 F.2d 996, 999 (5th Cir. 1990) ("inartfully drawn" notice of appeal). Here, there was no such filing at all.

We reject the defendants' argument that it is the intent of the would-be appellant which is dispositive. The argument ignores the interest in assuring that a party's filing provides adequate notice to other parties and the courts. See Smith, 502 U.S. at 248-49. The plaintiffs were never served with a copy of even the check, much less a notice of appeal. The defendants argue that the district court and the plaintiffs did have notice: they should have known from the _timing_ of the payment of the filing fee

_____

[6] The defendants are public officials, and their reliance on pro se cases does not advance their cause. See, e.g., Barrett v. United States, 105 F.3d 793, 794-96 (2d Cir. 1996) (per curiam), Turner v. Armontrout, 922 F.2d 492, 494 (8th Cir. 1991); Grune v. Coughlin, 913 F.2d 41, 43 (2d Cir. 1990).

-12-

from what orders an appeal was taken, and which parties were involved in the appeal. This argument has no purchase where the would-be appellant can point to no filing that provided sufficient notice. See id. at 248-49; cf. McLemore, 898 F.2d at 999.

Absent more, the submission of a check to the clerk in the amount of the filing fee, even with a legend on the check, is not the functional equivalent of a notice of appeal. "Th[e] principle of liberal construction [of Rule 3] does not . . . excuse noncompliance with the Rule." Smith, 502 U.S. at 248. The defendants' purported cross-appeal is dismissed.

### III.  QUALIFIED IMMUNITY

The plaintiffs appeal from the district court's post-verdict grant of qualified immunity. We employ de novo review of the legal conclusions. See Borges Colón v. Román-Abreu, 438 F.3d 1, 18 (1st Cir. 2006).

In this circuit, we have utilized a three-part test for qualified immunity. See Tremblay v. McClellan, 350 F.3d 195, 199 (1st Cir. 2003). Other circuits have used a test that addresses the same issues, considered in two steps. See, e.g., Davis v. City of Las Vegas, 478 F.3d 1048, 1053 (9th Cir. 2007); Papineau v. Parmley, 465 F.3d 46, 55 (2d Cir. 2006).

The district court decided the first of the immunity questions -- whether there was a violation of constitutional rights -- in favor of plaintiffs. Sueiro Vázquez, 414 F. Supp. 2d at 131.

-13-

Under our immunity law, the second question is whether the constitutional right was clearly established at the time of violation. Whitfield v. Meléndez-Rivera, 431 F.3d 1, 7 (1st Cir. 2005). The final question is "whether a reasonable officer, similarly situated, would understand that the challenged conduct violated the clearly established right at issue." Borges Colón, 438 F.3d at 18-19 (quoting Riverdale Mills Corp. v. Pimpare, 392 F.3d 55, 61 (1st Cir. 2004)) (internal quotation marks omitted). The district court did not decide whether the plaintiffs' rights were clearly established in the specific context of this case, and instead based its holding on the third prong of our immunity inquiry. Sueiro Vázquez, 414 F. Supp. 2d at 132-33. We agree with the district court that the defendants are entitled to immunity on the third prong.[7]

The facts do not permit a finding that these defendants would have understood that they were violating clearly established rights of the plaintiffs. Puerto Rico law requires executive branch public officials to act in accordance with the opinion of the Secretary of Justice when those officials seek clarification

---

[7] The parties have not adequately briefed the first two prongs, and the better course is not to address the constitutional question, particularly where addressing such a fact-specific question will not well serve a law clarification function. See Riverdale Mills, 392 F.3d at 62; Dirrane v. Brookline Police Dep't, 315 F.3d 65, 69-70 (1st Cir. 2002); see also Morse v. Frederick, 127 S. Ct. 2618, 2007 WL 1804317, at *20-22 (2007) (Breyer, J., concurring in the judgment in part and dissenting in part).

from the Secretary.[8]  See Colegio de Ingenieros y Agrimensores de P.R. v. Autoridad de Acueductos y Alcantarillados de P.R., 131 P.R. Dec. 735, 775 (1992) (recognizing that the Secretary of Justice's opinions bind those administrative agencies that seek his or her advice).  The defendants acted in accordance with the opinion of the Secretary of Justice that as a matter of Puerto Rico law Sueiro's appointment to her career position was wrongful, and with the Secretary's instruction that other personnel transfers pursuant to Act No. 183 be evaluated.  The advice specifically applied to the transactions which are the subject matter of this suit.[9]

The Secretary provided an opinion to defendant Torregrosa de la Rosa about plaintiff Sueiro, on which defendants reasonably relied.  That opinion unequivocally concluded that Sueiro's appointment to the career position of Historic Conservation Manager was contrary to the Puerto Rico Public Service Personnel Act, see

---

[8]      In its opinion and order, the district court stated that Torregrosa de la Rosa "was required to act in accordance with the Secretary's Opinion."  Sueiro Vázquez, 414 F. Supp. 2d at 133.  Plaintiffs have not disputed this proposition, either in the district court or in this court.  Thus, for purposes of this case, we assume that defendants were under such an obligation.

[9]      Citing U.S.I. Properties Corp. v. M.D. Construction Co., 860 F.2d 1, 8 (1st Cir. 1988), the plaintiffs argue that immunity was inappropriate based on the Secretary's opinion because the Secretary's views are not binding on the courts.  The argument misses the point.  Regardless of whether courts are similarly bound, plaintiffs have not disputed that the defendants were under an obligation to follow the Secretary's opinion.

P.R. Laws Ann. tit. 3, § 1351(7), and was "null and consequently ineffective."

The Secretary also directed Torregrosa de la Rosa to evaluate all personnel transactions stemming from the implementation of Act No. 183, in light of the requirements of section 1351. As a result, the defendants engaged an outside human resources expert, Ana Bonet, to perform an audit. Bonet concluded that Aponte did not meet the statutory requirements necessary for the career position to which he had been appointed in 2000, following the logic of the Secretary's opinion. Defendants reasonably relied on this conclusion.

"Under Puerto Rico law, personnel appointments made in violation of Commonwealth laws and regulations normally 'are null and void ab initio.'" Vázquez-Valentín v. Santiago-Díaz, 459 F.3d 144, 149 (1st Cir. 2006) (quoting González-de-Blasini v. Family Dep't, 377 F.3d 81, 86 (1st Cir. 2004)). Officials similarly situated to defendants would have reasonably believed that since the plaintiffs' appointments to their career positions were null and void, it would not violate the plaintiffs' clearly established constitutional rights to terminate their employment from positions they were not entitled to hold.[10]

---

[10]     Plaintiffs have not argued that it would be unreasonable for a public official to terminate an employee based on a finding that the employee's transfer was null and void. Cf. Morales-Santiago v. Hernández-Pérez, --- F.3d ---, No. 06-1459, 2007 WL 1491880, at *5 (1st Cir. May 23, 2007) (noting the propriety of an

-16-

Reliance on advice of counsel alone does not per se provide defendants with the shield of immunity. For example, in Borges Colón, an advice of counsel defense failed to establish qualified immunity. There, the defendant mayor did not claim to be bound by legal advice, and there was evidence that he had lied and that he did not in fact get approval for his reorganization plan from a human resources director and a municipal attorney; further, the mayor had admitted to others that the reorganization plan was a subterfuge to fire members of the opposition political party. Id. at 7, 12, 16-17.

This case does not involve advice from private counsel, who may have financial incentives to provide exactly the advice the client wants. Rather, it involves advice from the office of the Secretary of Justice of Puerto Rico, which has much broader duties and obligations. Reliance on the advice of Puerto Rico's chief legal officer, advice the defendants were required to follow by Puerto Rico law, was not unreasonable here. See Swanson v. Powers, 937 F.2d 965, 971-72 (4th Cir. 1991). We leave for another day the hypothetical situation in which there is very strong evidence that newly appointed or elected defendant state officials acted in conspiracy with the chief public legal officer to produce and act on plainly unreasonable legal advice meant to result in the

administration's "tak[ing] corrective actions to undo [unlawful] preferential salary adjustments").

-17-

violation of a plaintiff's clearly established rights under federal law.  Cf. Vance v. Barrett, 345 F.3d 1083, 1094 n.14 (9th Cir. 2003).

This case does not come close to being that situation. Plaintiffs ask us to get into the legal question of whether the Secretary of Justice correctly or even reasonably interpreted Puerto Rico law as to whether plaintiffs' appointments were null and void.  That is not an appropriate inquiry for the federal court engaged in an immunity analysis.  Even if the Secretary's advice were wrong or not even within the reasonable range of interpretations (and the Secretary's advice was within a reasonable range), that would not itself mean that reasonable officials in the position of defendants would understand that they were acting in violation of plaintiffs' clearly established constitutional rights.

At oral argument, plaintiffs argued that Torregrosa de la Rosa's request for an opinion from the Secretary contained a "mischaracterization" of Sueiro's job duties and description, that this mischaracterization was motivated by political discrimination, and that this led the Secretary astray.  Other circuits have denied immunity to officers in Fourth Amendment cases where officers manipulate evidence to mislead a prosecutor into authorizing an arrest.  See, e.g., Sornberger v. City of Knoxville, 434 F.3d 1006, 1016 (7th Cir. 2006).  Further, in Cariglia v. Hertz Equipment Rental Corp., 363 F.3d 77 (1st Cir. 2004), we outlined a theory of

liability for employment discrimination by a corporate employer when a subordinate motivated by discrimination provides erroneous information to an unwitting superior who acts on that information to terminate a plaintiff's employment. Id. at 85-88; see also Laxton v. Gap Inc., 333 F.3d 572, 584 (5th Cir. 2003); Abramson v. William Paterson Coll., 260 F.3d 265, 285-86 (3d Cir. 2001); Wallace v. SMC Pneumatics, Inc., 103 F.3d 1394, 1400 (7th Cir. 1997).

We leave for another day whether there is an analogy to these cases for mandated reliance on advice of the Secretary of Justice in a First Amendment political termination case which turns on a state law classification issue. This theory was not raised in the district court, nor was it raised in the plaintiffs' opening brief in this court, and it is twice forfeited. See Teamsters Union, Local No. 59 v. Superline Transp. Co., 953 F.2d 17, 21 (1st Cir. 1992) (arguments not advanced in the district court cannot be raised for the first time on appeal); Sandstrom v. ChemLawn Corp., 904 F.2d 83, 86-87 (1st Cir. 1990) (arguments not asserted in appellant's opening brief cannot be raised for the first time in reply brief).

The judgment of the district court is affirmed. No costs are awarded.