TORRUELLA, Circuit Judge
(Concurring in part, Dissenting in part).
Since 1976, the United States Supreme Court has held that the First Amendment forbids the discharge of “public employees solely for not being supporters of the political party in power, unless party affiliation is an appropriate requirement for the position involved.” Rutan v. Republican Party of III., 497 U.S. 62, 64, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990) (citing Elrod v. Burns, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976) and Branti v. Finkel, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980)). That inquiry — whether political affiliation is a valid requirement of the job in question — is the necessary starting point for political discharge cases. Limone v. Condon, 372 F.3d 39, 44 (1st Cir.2004).
This circuit leads the nation as one of the most prolific generators of political discrimination cases; in this area of litigation, the District of Puerto Rico has the dubious distinction of being the most fecund district in the circuit. See Morales-Santiago v. Hernández-Pérez, 488 F.3d 465, 466 (1st Cir.2007) (“[I]n Puerto Rico, a change between the Popular Democratic Party (PDP) and the New Progressive Party (NPP) [gives rise to] overly zealous political operatives of the prevailing party terminating], demoting], or reducing] the salaries of employees affiliated with the outgoing opposition party”). As a result of the proliferation of these cases and their public notoriety, the legal precepts established by them are widely known in Puerto Rico, particularly by those in public administration. It is, therefore, inconceivable in this day and age that a reasonable public official would by-pass an inquest into whether a position in a government agency requires political affiliation before taking the drastic action of firing an employee based on party affiliation. Considering the state of the law, one who fails to do so can hardly be classified as a reasonable public official.
Any reasonable public official conducting such an inquiry would have concluded that López-Quiñones’s position was not one requiring political affiliation. Indeed, by following the long-established case law in this circuit, the majority properly reaches the conclusion that López-Quiñones’s non-policy related position was protected from political patronage dismissal. Op. at 27 (“On the spectrum between policymaker and clerk, López[-Quiñones] was closer to the latter and is, at least on the present record, protected under Elrod.”) (internal quotation marks and citation omitted).
In reaching this conclusion, the majority begins its analysis with López-Quiñones’s detailed job description. See Op. at 25-26. Based on the job description, the majority finds that: (1) López-Quiñones was holding a “career” position under Puerto Rico law, id. at 26; (2) “almost all of the specific! ] [tasks were] routine and fairly pedestrian,” id. at 26-27; (3) his reporting and paperwork duties “most[ly] look mechanical,” id.; (4) he was “not involve[d in] advising any senior officials in policy matters,” id. at 27; (5) he “did not operate as a spokesperson or otherwise liaise with the public or other government agencies, except in ways largely ministerial,” id.; (6) he did not have “discretionary judgment! ] involving the implementation of policy, broadly speaking,” id.; and (7) he supervised “mostly janitors and other low-level employees.” Id. Significantly, citing to both Branti, 445 U.S. at 519, 100 S.Ct. *30 1287, and to Flynn v. City of Boston, 140 F.3d 42, 45 (1st Cir.1998), the majority states that “[i]t is hard to see how López[-Quiñones’s] position implicates significant policy issues, let alone ‘partisan political interests ... [or] concerns,’ ... nor does he appear to be one of those mid- or upper-level officials or employees who are ‘significantly connected to policy-making.’ ” Op. at 27. On these facts, the majority concludes that López-Quiñones’s position was not subject to patronage dismissal. I am in full agreement.
It is in the granting of immunity that I part company with my learned colleagues. Under our qualified immunity law, after finding that a constitutional right was violated, we turn to whether the law was clearly established at the time of the violation and whether a reasonable public officer would have understood that he was violating that right. See Sueiro Vázquez v. Tomgrosa de la Rosa, 494 F.3d 227, 234 (1st Cir.2007). I disagree with the majority’s conclusion that “as the law stood ... a reasonable official could (albeit mistakenly) have deemed López[-Quiñones] outside Elrod/Branti’s protection.” Op. at 27-28. As made evident by the majority’s own application of our clearly established law, López-Quiñones’s position was not subject to patronage dismissal. In deciding to terminate López-Quiñones from his position, the officials in this case recklessly ignored the established law of this circuit. Such behavior should lead to the dispossession of the mantle of qualified immunity, rather than the extension of this privilege to them.
The majority is able to conclude that the appellants are entitled to immunity because it gives undue weight to the fact that López-Quiñones’s “job title [is] similar” to two prior cases “concerning regional directors of government agencies in Puerto Rico.” Id. at 28 (citing Duriex-Gauthier v. López-Nieves, 274 F.3d 4 (1st Cir.2001) and Román Meléndez v. Inclán, 826 F.2d 130 (1st Cir.1987)). In so doing, the majority violates those very principles to which it claims adherence only a few pages earlier. As we have warned, the inquiry into the legitimacy of political patronage requires an inquiry that goes beneath the mere title of the position. See, e.g., Olmeda v. Ortiz-Quiñonez, 434 F.3d 62, 66 (1st Cir.2006) (“Actual functions of the job, not titles, control, and an official description of job functions is a presumptively reliable basis for determining those functions.” (internal citations omitted)); Flynn, 140 F.3d at 44 (noting that “duties prevail over titles”). Unfortunately, it appears that the majority’s invocation of this principle was mere lip service; in its grant of immunity, the majority inexplicably applies an entirely different and contradictory standard.
Even if the job titles in Duñex-Gauthier and Román Meléndez are similar to that of López-Quiñones, the employees’ actual responsibilities are substantially different. The employees in Duriex-Gauthier and Román Meléndez held “trust positions;” exercised meaningful supervision of a large number of employees; enjoyed discretion over the particular government services under their aegis; and represented their respective agencies before the public and other government entities. Duriex-Gauthier, 274 F.3d at 7-8, 10; Román Meléndez, 826 F.2d at 134-35. In contrast, none of those prerogatives or powers are present here.
Most importantly, unlike the employees in Dwriex-Gauthier and Román Meléndez, López-Quiñones was not involved in making or recommending any agency policy. There is nothing in the record to support a finding that López-Quiñones was a policymaker. The majority opinion describes him as having only “modest, if any, involvement in policymaking,” Op. at 26, and *31 even the appellants “failed to identify policy decisions in which López[-Quiñones] was directly involved or over which he had influence.” Id. at 27. Policymaking is the key function in requiring that the employee be required to belong to the political party in power. See Elrod, 427 U.S. at 367, 96 S.Ct. 2673 (holding that under the First Amendment “patronage dismissals” must be restricted to “policymaking positions”).
As stated by the majority at the outset of its opinion: “Our decisions ... ask[ ] whether a position’s functions are those of ‘a policymaker, a privy to confidential information, a communicator, or some other office holder whose function is such that party affiliation is an equally appropriate requirement.’ ” Op. at 26 (quoting Jimenez Fuentes v. Torres Gaztambide, 807 F.2d 236, 242 (1st Cir.1986) (en banc)). López-Quiñones’s job functions do not fall into any of those categories. He was essentially a foreman over a group of janitors and similar employees; membership in a particular political party was not a requirement of his job. It is truly difficult to believe that this was not known or easily discoverable by the appellants after applying our established jurisprudence in this area. After professing to apply our clear and established precedent regarding patronage dismissals, the majority makes an about-face and inexplicably relies on López-Quiñones’s job title rather than on his responsibilities or functions. See id. at 28. Far from clarifying the law, the majority muddles it and, in the process, gives a free ride to government officials who are not entitled to or deserving of such exceptional treatment.
I dissent to the granting of qualified immunity to these officials.